**THE LAW OFFICE OF
JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**JACKSON & FOSTER, LLC**
SIDNEY W. JACKSON, III (*phv* application to be filed)
75 St. Michael Street
Mobile, Alabama 36602
Phone: (251) 433-6699
Fax: (251) 433-6127

***Counsel for Plaintiffs and the Proposed Class***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISABETH MARTIN, on behalf of herself, all others similarly situated, and the general public,<br><br>     Plaintiff,<br><br>  v.<br><br>MONSANTO COMPANY,<br><br>     Defendant. | Case No: 5:16-cv-2168<br><br><u>NATIONWIDE CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>**15 U.S.C. §§ 2301, *ET SEQ*.;**<br><br>**CAL. CIV. CODE §§ 1750 *ET SEQ*.;**<br><br>**CAL. BUS. & PROF. CODE §§17500 *ET SEQ*.;**<br><br>**CAL. BUS. & PROF. CODE §§17200 *ET SEQ*.; AND**<br><br>**FOR BREACH OF EXPRESS & IMPLIED WARRANTIES.**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Elisabeth Martin, on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby brings this action against Monsanto Company, and alleges the following upon her own personal knowledge or, where she lacks personal knowledge, upon information and belief, including the investigation of her counsel.

## SUMMARY OF CASE

1.      Monsanto is the manufacturer of the ubiquitous herbicide known as Roundup. Among other Roundup products, Monsanto manufactures, markets, and sells Roundup Weed & Grass Killer Concentrate Plus ("Roundup Concentrate Plus") and Roundup Weed & Grass Killer Super Concentrate ("Roundup Super Concentrate," together with Roundup Concentrate Plus, the "Roundup Concentrates"). Unlike "Ready-to-Use" Roundup, the Roundup Concentrates are intended to be diluted with water prior to use, so that the diluted product will have the same weed-killing power as Ready-to-Use Roundup

2.      During at least the preceding four years, Monsanto advertised the Roundup Concentrates as being capable of making a certain number of gallons. For example, prominently at the top of the container in bold numbers on a red background, the 32 oz. size advertises it makes 10 gallons of Roundup, the 36.8 oz. size advertises it makes 12 gallons of Roundup and the 64 oz. size advertises it makes 21 gallons of Roundup, as pictured below.





3.     These advertisements were false, however, because the Roundup Concentrates were in fact only capable of making *half* the number of gallons represented when diluted to the same strength as "Ready-to use" Roundup according to Monsanto's own instructions. The 32 oz. size makes only 5 gallons of Roundup, the 36.8 oz. size makes only 6 gallons of Roundup, and the 64 oz. size makes only 10.5 gallons of Roundup. The same holds true for all sizes and variations of the Roundup Concentrates.

4.     Plaintiff brings this action to enjoin Monsanto from continuing to falsely advertise the Roundup Concentrates in this manner, and to recover damages for herself and other purchasers.

## **JURISDICTION & VENUE**

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a state different from Monsanto. In addition, more than two-thirds of the members of the class reside in states other than the state in which Monsanto is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply. In addition, the Court has federal question jurisdiction under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. The Court also has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.     The Court has personal jurisdiction over Monsanto pursuant to Cal. Code Civ. P. § 410.10, as a result of Monsanto's substantial, continuous and systematic contacts with the state and because Monsanto has purposely availed itself of the benefits and privileges of conducting business activities within the state.

7.     Venue is proper in this Central District of California pursuant to 28 U.S.C. § 1391(b) and (c), because Monsanto resides (*i.e.*, is subject to personal jurisdiction) in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

**PARTIES**

8.    Plaintiff Elisabeth Martin is a resident of Highland, California.

9.    Defendant Monsanto Company is a Delaware corporation with its principal place of business in St. Louis, Missouri.

**FACTS**

10.    Monsanto is one of the world's largest agricultural companies, and has long been manufacturing and selling herbicides to control weeds. Monsanto's leading herbicide is called Roundup, whose active ingredient is called glyphosate. Monsanto first introduced Roundup in the mid-1970s for the agricultural community, and then in the mid-1980s for residential use. Roundup has been a dramatically successful product, and is one of the most widely-used herbicides in the world for residential use.

11.    Monsanto manufactures, markets, and sells Roundup in various formulations, including Roundup Ready-to-Use ("Ready-to-Use") formulations, which are intended simply to be sprayed directly out of the bottle in which the product is purchased; and concentrated versions of the Roundup, such as the Roundup Concentrates, which the purchaser must first dilute with water before using with a tank sprayer.

12.    Specifically, Monsanto manufactures, markets and sells Roundup Concentrate Plus in 32-, 36.8- and 64-ounce bottles (as pictured in the introduction above), and Roundup Super Concentrate in 35.2-, 64-, and 128-ounce bottles, as pictured below.



3

13.     The principal display panel of each of the Roundup Concentrates prominently claims that that product "Makes Up to" a stated number of gallons, as follows.

| Roundup Concentrate Plus – 32 Fl. Oz. (1 Qt.) | "Makes Up to **10 Gallons**" |
| Roundup Concentrate Plus – 36.8 Fl. Oz. | "Makes Up to **12 Gallons**" |
| Roundup Concentrate Plus – 64 Fl. Oz. (1/2 Gallon) | "Makes Up to **21 Gallons**" |
| Roundup Super Concentrate – 35.2 Fl. Oz. | "Makes Up to **23 Gallons**" |
| Roundup Super Concentrate – 64 Fl. Oz. (1/2 Gallon) | "Makes Up to **42 Gallons**" |
| Roundup Super Concentrate – 128 Fl. Oz. (1 Gallon) | "Makes Up to **85 Gallons**" |

14.     Directly under the Roundup name, each Roundup Concentrate label states "WEED & GRASS KILLER." Further, directly under the Roundup name and within a prominent geometric design with an eye-catching illustration, each Roundup Concentrate label also states claims the product "**KILLS** THE ROOTS GUARANTEED." A close-up of a Roundup Super Concentrate label illustrating these elements is depicted below.



15.     Given the price of the Roundup Concentrates in comparison to Ready-to-Use Roundup, together with the purported number of gallons each Roundup Concentrate makes, Monsanto markets the Roundup Concentrates as better values than its Ready-to-Use products.

4

16.     A glossy several-page pamphlet is taped over the back label of each Roundup Concentrate bottle, with its front page showing a graphic providing information under three headings, "Where to Use," "What to Know," and "How to Use." The back of the bottle of the Roundup Super Concentrate and Roundup Concentrate Plus, respectively, with the taped pamphlet, is depicted below.

 

*Martin v. Monsanto Company*, Case No. 16-cv-2168
CLASS ACTION COMPLAINT

17.     Close-up exemplars of this graphic for Roundup Concentrate Plus, and Roundup Super Concentrate, respectively, are depicted below.

### Roundup Concentrate Plus



### Roundup Super Concentrate



*Martin v. Monsanto Company*, Case No. 16-cv-2168
CLASS ACTION COMPLAINT

18.   As depicted above, the specific statements within each section of the graphic are as follows:

How to Use

- "Add 6 fl oz Per Gallon of Water" [Roundup Concentrate Plus]
- "Add 2 1/2 fl oz Per Gallon of Water" [Roundup Super Concentrate]
- "Use a Tank Sprayer"

Where to Use

- "Along Fences"
- "Driveways & Walkways"
- "Around Trees"
- "Around Flower Beds"

What to Know

- "Rainproof in 30 Minutes"
- "Visible Results in 12 Hours" [Roundup Concentrate Plus]
- "Visible Results in 2 to 4 Days" [Roundup Super Concentrate]
- "Plant 1 to 3 Days After Application (See booklet for details)"

19.   Given the dilutions set forth on the back panel of each Roundup Concentrate, the specified number of gallons that Monsanto represents the Roundup Concentrates are capable of making is *double* what they are actually capable of making when mixed with water according to Monsanto's own instructions. Thus, the Roundup Concentrates actually make about *half* the amount Monsanto claims, as demonstrated in the table below.

| Product | "Makes Up to" Gallon Claim | Back Label Instruction (Amount to Mix with 1 Gallon Water) | Amount Made Following Instructions |
|---|---|---|---|
| Concentrate Plus (32 oz.) | 10 gallons | 6 fl. oz | 5.3 gallons |
| Concentrate Plus (36.8 oz.) | 12 gallons | 6 fl. oz | 6.1 gallons |

*Martin v. Monsanto Company*, Case No. 16-cv-2168
CLASS ACTION COMPLAINT

| Product | "Makes Up to" Gallon Claim | Back Label Instruction (Amount to Mix with 1 Gallon Water) | Amount Made Following Instructions |
|---|---|---|---|
| Concentrate Plus (64 oz.) | 21 gallons | 6 fl. oz | 10.7 gallons |
| Super Concentrate (35.2 oz.) | 23 gallons | 2.5 fl. oz | 14.1 gallons |
| Super Concentrate (64 oz.) | 42 gallons | 2.5 fl. oz | 25.6 gallons |
| Super Concentrate (128 oz.) | 85 gallons | 2.5 fl. oz | 34 gallons |

20.   Sealed underneath the back-panel label page is the remainder of the pamphlet that also includes instructions for use.

21.   But the pamphlet as taped to the back label of the bottles is sealed tightly and only with careful effort is the pamphlet able to be removed and opened without being torn.

22.   As a result, most reasonable consumers would not feel permitted to unseal the pamphlet prior to purchase. Thus, the vast majority of purchasers do not rely on any of the information contained within the pamphlet, and would not even see that information, *prior* to purchase.

23.   Even for those who have already purchased the product and then succeeded in removing the pamphlet, generally they do not feel the need to review the instructions on several pages of fine print before actual use, particularly since they have already seen the easy-to-read diagram with mixing instructions on the cover of the pamphlet prior to purchase.

24.   And even for those who do read the remainder of the pamphlet after purchase, it is only through a careful review of this pamphlet, including noticing a buried "fine print" instruction, that the customer may see the inconsistent statement from Monsanto that accounts for the prominent misrepresentation that overstates the number of gallons made.

25.   As an example, two internal pages of the several-page pamphlet for the 1/2 gallon Super Concentrate are depicted below:

**DIRECTIONS FOR USE**

It is a violation of Federal law to use this product in a manner inconsistent with its labeling.

**PRODUCT FACTS**     KILLS ALL TYPES OF WEEDS & GRASSES

Makes up to 42 Gallons     Treats up to 12,750 sq ft

**HOW IT WORKS:** Roundup® Weed & Grass Killer Super Concentrate is absorbed by the weed's leaves. It moves through the weed to the root, stopping the production of an essential enzyme found in plants (but not in humans or animals). Weeds die, roots and all - so they don't grow back. Kills only what you spray. Any product not absorbed by plants breaks down without moving in or on the soil to untreated plants. Weeds usually yellow and wilt within 2 to 4 days with complete kill in 1 to 2 weeks.

**WHERE TO USE**
• On patios, walkways, driveways, gravel or mulch beds
• Around fruits, vegetables, flowers, shrubs or trees
• Along fences
• In large areas
    - For lawn replacement     - For garden plot preparation

**MIXING INSTRUCTIONS**

**Tank Sprayer: Use of a Roundup® Brand Sprayer is recommended.** A plastic, fiberglass, plastic-lined steel or stainless steel sprayer may also be used.
• For best results, add 2-1/2 fl oz (5 Tbs) to 1 gallon of water.
• Spot treat or spray evenly over 300 sq ft.

For easy to kill weeds such as seedlings, add 1-1/2 fl oz (3 Tbs) to 1 gallon of water.

**Hose-End Sprayer:** For large areas, consider using the Ortho® Dial 'n Spray®
• Set dial to 2-1/2 oz.
• To sprayer jar add 2-1/2 fl oz (5 Tbs) for each 300 sq ft. **DO NOT** add water.
• Spray evenly over measured area.
• After spraying, unused product can be poured back into its original container.

1 Tablespoon (Tbs) = 3 teaspoons (tsp)     1 fl oz = 2 Tbs

Do not mix, store or apply with a galvanized or unlined steel (except stainless steel) sprayer, or through any irrigation system.

**HOW TO APPLY**
• Spray the weeds or grasses you want to kill until thoroughly wet.
• When spot treating weeds around desirable plants, shield plants from drift with a sheet of cardboard or plastic. If desirable plants are accidentally sprayed, rinse off immediately with water.

**IMPORTANT: Do not spray plants or grasses you like – they will die.** Not recommended for spot weed control in lawns since glyphosate kills lawn grasses.

**WHEN TO APPLY**
• Apply when weeds are actively growing.
• For best results, apply during warm, sunny weather (above 60° F) to accelerate systemic movement from foliage to roots.
• Apply when air is calm to prevent drift to desirable plants.
• RAINPROOF Protection: Rain or watering 30 minutes after application will NOT wash away effectiveness.
• If used to control weeds around fruit or nut trees, caneberries, or grapevines, allow 17 days before harvesting.

**WHEN TO REPLANT**
• All ornamental flowers, trees and shrubs may be planted **1 day after** application.
• Lawn grasses, herbs, vegetables (all), and fruits may be planted **3 days after** application.

**HOW TO CLEAN SPRAYER:** To clean sprayer after use, rinse sprayer and all sprayer parts with water 3 times. Spray rinse water on bare soil or gravel. After cleaning, sprayer may be used for other products.

**ADDITIONAL TIPS**

**To Kill Vines**
• If vines are growing up poles, fences, or tree trunks with mature bark, cut vines to a height of 3 to 4 feet and spray vines thoroughly.
• If vines are climbing shrubs or tree trunks with green bark, cut vines at base and treat as directed for stumps or spray regrowth. If spraying regrowth, shield shrubs and tree trunks from spray drift with a sheet of cardboard or plastic.

**To Kill Bamboo**
• Cut canes close to the ground.
• Make cut just below a stem joint to create a hollow stem reservoir.
• Pour 1 Tbs of undiluted product into the hollow stem reservoir.
• Browning of the canes will occur in 7-14 days.
• Spray foliage if regrowth occurs.

**To Kill Stumps**
• Cut living stump close to ground.
• Drive 4 to 5 holes into freshly cut stump.
• Immediately pour undiluted product into holes.

**IMPORTANT:** Some trees may share the same root system. Adjacent trees having a similar age, height and spacing may signal a shared roots system. Injury may occur to non-treated trees when one or more trees sharing common roots are treated.

**For Lawn Replacement:** Use Roundup® Weed & Grass Killer Super Concentrate to kill a lawn and weeds before planting a new lawn.
• Skip one mowing before spraying.
• Use 2-1/2 fl oz (5 Tbs) per gallon of water for each 300 sq ft.
• If soil is dry, water before application and 2 to 3 days after application.
• If green patches remain after 7 days, reapply.
• Wait at least 3 days after last application to rake, till or replant with seed or sod.

26.     Notably, the pamphlet falsely restates, as the very first item under the heading, "PRODUCT FACTS - KILLS ALL TYPES OF WEEDS & GRASSES," that the product "Makes up to 42 Gallons." The pamphlet further falsely states, as the first bullet under "Mixing Instructions," that, "For best results, add 2-1/2 fl oz (5 Tbs) to 1 gallon of water."

27.     Only when a purchaser reads further down into "Mixing Instructions" is the very first and only reference to the possibility of using a greater dilution, wherein it states "For easy to kill weeds such as seedlings, add 1-1/2 fl oz (3 Tbs) to 1 gallon of water."

28.     A reasonable purchaser – for example, an ordinary homeowner interested in removing weeds along a fence, on a driveway, or around trees or flower beds – does not have the professional understanding of what constitutes an "easy to kill weed," and does not have

the technical expertise to discern when it would be appropriate to use less concentrate per this instruction. To the contrary, a reasonable consumer would instead rely on Monsanto's representation that "for best results, add 2-1/2 fl oz (5 Tbs) to 1 gallon of water," especially inasmuch as this is consistent with the prominent graphic on the product's rear panel (which is also the cover to the pamphlet).

29.    Reasonable consumers read and understand "up to" representations – like the "Makes Up to" a specific number of "Gallons" representations on the Roundup Concentrates – as providing, under normal and reasonable conditions for use, the maximum results promised. Indeed, the U.S. Federal Trade Commission  has explicitly determined this to be the case, stating that its "view" is "that advertisers using these claims should be able to substantiate that consumers are likely to achieve the maximum results promised under normal circumstances."

30.    As demonstrated by the pamphlet itself, including its cover, use of the product only on "weeds such as seedlings" is not normal use. Rather, normal use is as represented on the pamphlet's cover, and of course on the front of the bottle: as a "WEED AND GRASS KILLER," that "KILLS ALL TYPES OF WEEDS & GRASSES," and is to be used "Along Fences," on "Driveways & Walkways," "Around Trees," and "Around Flower Beds," wherein the use is "GUARANTEED" to "KILL[] THE ROOTS."

31.    This is especially true where, as here, the products at issue are concentrated forms of a Ready-to-Use product. In other words, reasonable consumers understand that they will obtain the same degree of efficacy, indeed the same formulation and therefore the same concentration of active ingredient, as Monsanto's Ready-to-Use Roundup product, the only difference being that for a higher price paid, the consumer receives a better value: more product at the same concentration for less money.

32.    Indeed, this is what Monsanto intends a consumer to understand about the Roundup Concentrates,  this is a fundamental aspect of Monsanto's marketing of these concentrate products, this is what consumers reasonably rely on in purchasing these

concentrate products, and this is what consumers reasonably expect upon purchasing and using these concentrate products..

33.   When diluting to the maximum number of gallons promised by Monsanto, however, purchasers achieve concentrations that are well below Ready-to-Use Roundup, which contains a 2.0% concentration of glyphosate.

34.   For example, the 64-ounce bottle of Roundup Concentrate Plus states on the front of the bottle that it "Makes Up to 21 Gallons." The back of the bottle instructs "Add 6 fl oz per Gallon of water." At 6 fluid ounces per gallon, a 64-fluid ounce bottle makes only 10 2/3 gallons, not 21 (64 ÷ 6 = 10.67).

35.   To achieve 21 gallons, the 64-ounce bottle needs to be diluted in a ratio of 3 fluid ounces Roundup Concentrate Plus to one gallon (or 128 fluid ounces) of water (64 ÷ 21 = 3.05, and 64 ÷ 3 = 21.33).

36.   However, at a dilution sufficient to realize the maximum amount of gallons promised by Monsanto, the glyphosate concentration of both products falls well below that of Ready-to-Use Roundup and becomes less effective, or not effective at all, and will not kill the weeds and their roots as depicted and represented on the label.

37.   A 64-ounce bottle of Roundup Concentrate Plus contains 18% glyphosate, or 11.52 ounces. Divided among 21 gallons of water, each gallon would contain 0.55 ounces of glyphosate. A gallon of water contains 128 fluid ounces, and mixing requires adding 3 ounces of Roundup Concentrate Plus, for a total of 131 fluid ounces. Thus, the 0.55 ounces of glyphosate represent just a 0.4% concentration (0.55 ÷ 131 = 0.0042)—just 20% the concentration of Roundup Ready-to-Use Weed & Grass Killer III, which has a glyphosate concentration of 2.0%.

38.   This math holds for each size of Roundup Concentrate Plus that Monsanto offers, as demonstrated in the table below.

| Product | "Makes Up to" Gallon Claim | Back Label Instruction (Amount to Mix with 1 Gallon Water) | Amount Made Following Back Instructions | Glyphosate Concentration in Dilution Needed for Max Gallons |
|---|---|---|---|---|
| Concentrate Plus (32 oz.) | 10 gallons | 6 fl. oz | 5.3 gallons | 0.44% |
| Concentrate Plus (36.8 oz.) | 12 gallons | 6 fl. oz | 6.1 gallons | 0.42% |
| Concentrate Plus (64 oz.) | 21 gallons | 6 fl. oz | 10.7 gallons | 0.42% |

39.    Despite its higher concentration of glyphosate at 50.2%, the same is true of Roundup Super Concentrate.

40.    For example, the 64-ounce bottle of Roundup Super Concentrate states that it "Makes Up to 42 Gallons," and the back instructs the purchaser to use "2 1/2 fl. oz Per Gallon of Water." At that dilution, the 64-ounce bottle of Roundup Super Concentrate makes only 25.6 gallons, not 42 (64 ÷ 2.5 = 25.6).

41.    To achieve 42 gallons, the 64-ounce bottle needs to be diluted in a ratio of 1.5 fluid ounces Roundup Super Concentrate to one gallon (or 128 fluid ounces) of water (64 ÷ 42 = 1.52, and 64 ÷ 1.5 = 42.67).

42.    A 64-ounce bottle of Roundup Super Concentrate contains 50.2% glyphosate, or 32.128 ounces. Divided among 42 gallons of water, each gallon would contain 0.76 ounces of glyphosate. A gallon of water contains 128 fluid ounces, and mixing requires adding 1.5 ounces of Roundup Super Concentrate Plus, for a total of 129.5 fluid ounces. Thus, the 0.76 ounces of glyphosate is a mere 0.6% concentration (0.76 ÷ 129.5 = 0.0059)—just 30% the strength of Roundup Ready-to-Use Weed & Grass Killer III, which has a glyphosate concentration of 2.0%.

43.    This math holds for each size of Roundup Super Concentrate that Monsanto offers, as demonstrated in the table below.

| Product | "Makes Up to" Gallon Claim | Back Label Instruction (Amount to Mix with 1 Gallon Water) | Amount Made Following Back Instructions | Glyphosate Concentration in Dilution Needed for Max Gallons |
|---|---|---|---|---|
| Super Concentrate (35.2 oz.) | 23 gallons | 2.5 fl. oz | 14.1 gallons | 0.59% |
| Super Concentrate (64 oz.) | 42 gallons | 2.5 fl. oz | 25.6 gallons | 0.59% |
| Super Concentrate (128 oz.) | 85 gallons | 2.5 fl. oz | 34 gallons | 0.59% |

44.    It is common industry practice to assess the efficacy of a glyphosate product in its weed killing power by measuring the pounds of glyphosate acid equivalent per US gallon (referred to as "acid equivalent" or "AE"). Being familiar with this practice, Monsanto includes this measurement on the front of each Roundup Product's label (for the Roundup Concentrates, this number is pre-dilution). The higher the number, the higher the acid content, meaning the more efficacious the product is at killing weeds. The chart below demonstrates that, when diluted to the specified number of gallons, the AE falls well below what is considered efficacious and below Monsanto's Ready-to-Use Roundup products:

| Product | Undiluted AE Value (lbs. per US Gallon) | AE Value When Diluted to Yield the "Makes Up to" Number of Gallons | AE Value When Diluted According to Instructions |
|---|---|---|---|
| Roundup Ready to Use Weed Killer III | 0.1 | - | - |
| Concentrate Plus | 1.2 | 0.05 | 0.11 |
| Super Concentrate | 3.6 | 0.08 | 0.14 |

45.    Reasonable consumers should not be expected to notice, and then engage in the math necessary to determine that, following the dilution instructions provided on the back of the label of each Roundup Concentrate, the product only makes half the amount stated prominently on the front, or that the concentration will be so low as to render the product less

13

effective than Ready-to-Use Roundup, and perhaps altogether ineffective, especially for certain applications.

46.   Moreover, even for the rare consumer that might engage in the math and notice the discrepancy, no explanation is provided except the single, small-print sentence buried in the pamphlet, and thus the labeling remains confusing, and at best ambiguous as to whether, and under what circumstances, the product "Makes Up to" the amount stated, and at what point the efficacy of the product becomes less than what the consumer believes it to be, or not efficacious at all.

47.   Further, even if a consumer did the math, noticed the discrepancy, and assumed the truth was the lower of the two values, the consumer would *still* need to engage in a number of additional math steps—and to know that the equivalent Ready-to-Use Roundup product contains a 2.0% concentrate of glyphosate and a 0.1 AE in order to understand that the concentrated product contains a significantly lower concentration, whether made at full- or half- strength.

48.   By diluting the Roundup Concentrates according to the prominent instructions on the back panel and cover of the instruction pamphlet, to concentrations well below what the Ready-to-Use Roundup contains, purchasers unknowingly create a product that is substantially less effective than Ready-to-Use, and which may be altogether ineffective, especially for certain applications.

## PLAINTIFF'S PURCHASE, RELIANCE, AND INJURY

49.   Plaintiff Elisabeth Martin purchased Roundup Super Concentrate on at least three occasions,  from the Wal-Mart located at 4210 East Highland Avenue, in Highland, California, or the Lowes located at 27847 Greenspot Road, in Highland, California.

50.   Ms. Martin most recently purchased the product in January or February of 2016. Ms. Martin believes she purchased the 35.2- and/or 64-ounce sizes.

51.   Plaintiff (and other members of her family) use the Roundup Super Concentrate with a handheld sprayer, along her sidewalk and driveway, and to kill weeds that come up through the cement and on her patio. When using the Roundup Super Concentrate, plaintiff

diluted the product according to the instructions prominently displayed on the front page of the pamphlet taped to the back panel of the product's label, which states, "For best results, add 2-1/2 fl oz (5 Tbs) to 1 gallon of water." Plaintiff opened and reviewed the inside pages of the pamphlet only after purchasing the product, and even then relied upon and followed the most prominently displayed mixing instruction, i.e., the first bullet under the heading "MIXING INSTRUCTIONS", stating the same thing.

52.     In purchasing Roundup Super Concentrate, plaintiff relied on the prominent labeling claim near the top of the front of the bottle stating that the product makes "Up to 23 Gallons," or "Up to 42 Gallons," which she took to mean would, in fact, make 23 gallons or 42 gallons when used as directed.

53.     When purchasing Roundup Super Concentrate, plaintiff was seeking a product that was effective at killing all unwanted weeds and grass, and which was more affordable than the Roundup Ready-to-Use products, and understood that she was purchasing a concentrate with a substantially better dollar-per-gallon value than the Ready-to-Use alternative (*i.e.*, the value that would be had if the product supplied the maximum number of gallons). Moreover, plaintiff was seeking a product that would yield the number of gallons represented, and, at the dilution that resulted in that amount of gallons, would kill all unwanted weeds and grass, including being "GUARANTEED" to "KILL[] THE ROOTS."

54.     These representations, upon all of which plaintiff relied in purchasing these products, however, were false and misleading, and had the capacity, tendency, and likelihood to confuse or confound plaintiff and other consumers acting reasonably. This is because, as described in detail herein, the Roundup Concentrates *do not* yield the volume, in gallons, as promised on the label, if following the instructions prominently stated on the product's back panel (i.e., on the instruction pamphlet's cover).

55.     These representations were also false and misleading because the Roundup Concentrates yield the volume, in gallons, of a product that is not as effective at killing all types of weed and grass, such as the Ready-to-Use Roundup products, and, diluted to the maximum volume represented, may not be effective at all, especially for certain applications.

56. The Roundup Concentrates cost more than similar products without misleading labeling, and would have cost less absent the false and misleading statements complained of herein.

57. Plaintiff paid more for Roundup Super Concentrate, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling complained of herein.

58. For these reasons, Roundup Super Concentrate was worth less than what plaintiff paid for it, and may have been worth nothing if diluted to yield, by volume, the number of gallons promised on the label.

59. By use of its misleading labeling, Monsanto created increased marketplace demand for the Roundup Concentrates, and increased its market share, relative to what its demand and share would have been had Monsanto labeled the Roundup Concentrate products truthfully.

60. Plaintiff lost money as a result of Monsanto's deceptive claims and practices in that she did not receive what she paid for when purchasing Roundup Super Concentrate.

61. Plaintiff detrimentally altered her position and suffered damages in an amount equal to the amount she paid for Roundup Super Concentrate, or at least some portion thereof.

62. If plaintiff could be assured that claims regarding the amount yielded when mixing according to instructions was accurate, and that the product was effective at killing all weeds and grass as a result, and was not otherwise false or misleading, she would consider purchasing the product in the future.

## **CLASS ACTION ALLEGATIONS**

63. While reserving the right to redefine or amend the class definition prior to seeking class certification, pursuant to Federal Rule of Civil Procedure 23, plaintiff seeks to represent a class of all persons in the United States who, on or after October 13, 2012 (the "Class Period"), purchased the Roundup Concentrates for personal or household use (the "Class" or "Nationwide Class").

64.     While reserving the right to redefine or amend the class definition prior to seeking class certification, pursuant to Federal Rule of Civil Procedure 23, plaintiff also seeks to represent a subclass of all persons who, during the Class Period, purchased the Roundup Concentrates for personal or household use (the "Subclass" or "California Subclass").

65.     The members in the proposed Class and Subclass are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class and Subclass members in a single action will provide substantial benefits to the parties and Court.

66.     Questions of law and fact common to plaintiffs and the Class and Subclass include:

    a.     whether by mixing according to the instructions on the back label of the Roundup Concentrates, the products would result in the "Makes Up To" amount of gallons stated on the principal display panel and in the first bullet point under the heading "MIXING INSTURCTIONS" in the taped, sealed pamphlet;

    b.     whether the claimed "Makes up to" amount of gallons was material to purchasers;

    c.     Whether a reasonable consumer believes that "Makes Up To" actually means the product will make that amount when used under normal, reasonable conditions;

    d.     Whether a reasonable consumer would remove the sealed pamphlet before purchasing any Roundup Concentrate products;

    e.     Whether a reasonable consumer would understand what "easy to kill weeds such as seedlings" means;

    f.     Whether a reasonable consumer would be likely to deviate from the instructions included on the back panel of Concentrate Plus and/or in the pamphlet to "Add 6 fl oz per Gallon of Water" in light of Monsanto's representation "for best results, add 6 fl oz (12 Tbs) per gallon of water."

g.      Whether a reasonable consumer would be likely to deviate from the instructions included on the back panel of Super Concentrate and/or in the pamphlet to "Add 2 1/2 fl oz per Gallon of Water" in light of Monsanto's representation "for best results, add 2-1/2 fl oz (5 Tbs) to 1 gallon of water."

h.      Whether by diluting the Roundup Concentrates to actually obtain the "Makes Up To" amount of gallons claimed, the products are less effective than Monsanto's Ready-to-Use products;

i.      Whether by diluting the Roundup Concentrates to actually obtain the "Makes Up To" amount of gallons claimed, the products are ineffective;

j.      Whether Monsanto's conduct violates public policy;

k.      The proper amount of damages, including punitive damages;

l.      The proper amount of restitution;

m.      The proper scope of injunctive relief, including corrective advertising and recall from the marketplace; and

n.      The proper amount of attorneys' fees.

67.     These common questions of law and fact predominate over questions that affect only individual Class or Subclass members.

68.     Plaintiff's claims are typical of Class and Subclass members' claims because they are based on the same underlying facts, events, and circumstances relating to Monsanto's conduct. Specifically, all Class and Subclass members, including plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Roundup Concentrates, and suffered economic injury because Roundup Concentrates are misrepresented. Absent Monsanto's business practice of deceptively and unlawfully labeling the Roundup Concentrates, plaintiff and other Class and Subclass members would not have purchased the Roundup Concentrates, or would have paid less for the products.

69.     Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass, have no interests incompatible with the interests of the Class and Subclass, and

have retained counsel competent and experienced in class action litigation, and specifically in litigation involving false and misleading advertising.

70. Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class and Subclass member is small, such that, absent representative litigation, it would be infeasible for Class and Subclass members to redress the wrongs done to them.

71. Monsanto has acted on grounds applicable to the Class and Subclass, thereby making appropriate final injunctive and declaratory relief concerning the Class and Subclass as a whole.

72. As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

73. In addition, it may be appropriate, pursuant to Fed. R. Civ. P. 23(c)(4), to maintain this action as a class action with respect to particular issues.

<u>**CAUSES OF ACTION**</u>

**FIRST CAUSE OF ACTION**

**VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT,**

**15 U.S.C. §§ 2301 *ET SEQ.***

**(By the Nationwide Class)**

74. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

75. The Roundup Concentrates are consumer products within the meaning of 15 U.S.C. § 2301(1).

76. Plaintiff and the Class members are consumers within the meaning of 15 U.S.C. § 2301(3).

77. Monsanto is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) & (5).

78. The Magnuson-Moss Warranty Act permits a consumer to recover damages caused "by the failure of a supplier, warrantor, or service contractor to comply with any

obligation under his [Act], or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1).

79.    Monsanto's claims that the Roundup Concentrates "Make[] Up to" a certain number of gallons is a "written warranty" within the meaning of the Act because it is an "affirmation of fact or written promise made in connection with the sale of" the product, "which relates to the nature of the material . . . and affirms or promises that such material . . . is defect free or will meet a specified level of performance . . . ." 15 U.S.C. § 2301(6)(A).

80.    As set forth herein, the Roundup Concentrates do not "Make[] Up to" the number of gallons claimed, unless so diluted as to make the product either ineffective, or substantially less effective than a reasonable consumer would expect based on other claims on the label, such as the statements about the applications for which the products can be used.

81.    Although the Roundup Concentrates do not meet the "Make[s] Up to" specification, Monsanto has so far failed to refund Roundup Concentrate purchasers their money.

82.    By reason of Monsanto's breach of these express warranties, Monsanto has violated the statutory rights due plaintiff and the class members pursuant to the Magnuson-Moss Warranty Act, thereby damaging plaintiffs and the class members. 15 U.S.C. §§ 2301 *et seq.*

83.    Plaintiff and the class were injured as a direct and proximate result of Monsanto's breach because: (a) they would not have purchased the Roundup Concentrates on the same terms if they had known the true facts concerning the amount the products make; (b) they paid a price premium due to Monsanto's misleading representations, and (c) the Roundup Concentrates do not perform as promised when diluted to make the maximum number of gallons claimed.

84.    Plaintiff, on behalf of herself and the class members, seeks damages, equitable relief, and attorney's fees and costs pursuant to 15 U.S.C. §§ 2310(d)(1)-(2).

## SECOND CAUSE OF ACTION

### Violations of the California Consumers Legal Remedies Act,

### Cal. Civ. Code §§ 1750 *et seq.*

### (By the California Subclass)

85. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

86. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

87. Monsanto's false and misleading labeling and other policies, acts, and practices described herein were designed to, and did, induce the purchase and use of Monsanto's Roundup Concentrates for personal, family, or household purposes by plaintiff and other Subclass members, and violated and continue to violate at least the following sections of the CLRA:

      a.    § 1770(a)(5): Representing that goods or services have characteristics, ingredients, uses, benefits, or quantities which they do not have;

      b.    § 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

      c.    § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

      d.    § 1770(a)(16): Representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

88. Monsanto profited from its sales of the falsely, deceptively, and unlawfully advertised Roundup Concentrates to unwary consumers.

89. Monsanto's wrongful business practices regarding the Roundup Concentrate constituted, and constitute, a continuing course of conduct in violation of the CLRA.

90.    Plaintiff, on behalf of herself and the Subclass, seeks injunctive relief under Civil Code § 1782(d).

91.    In compliance with Cal. Civ. Code § 1782, plaintiff sent written notice to Monsanto of her claims. Although plaintiff does not currently seek damages for her claims under the CLRA, if Monsanto refuses to remedy the violation within 30 days of receiving the notice letter, plaintiff may thereafter amend this Complaint to seek damages.

92.    In compliance with Cal. Civ. Code § 1782(d), an affidavit of venue is filed concurrently herewith.

**THIRD CAUSE OF ACTION**

**Violations of the False Advertising Law,**

**Cal. Bus. & Prof. Code §§ 17500** *et seq.*

**(By the California Subclass)**

93.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

94.    Under the FAL, "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

95.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Monsanto relating to its Roundup Concentrates misled consumers acting reasonably as to the amount purchased and efficacy of Roundup Concentrates.

96.    Plaintiff suffered injury in fact as a result of Monsanto's actions as set forth herein because plaintiffs purchased Roundup Super Concentrate in reliance on Monsanto's false and misleading marketing claims that the products "Make Up to" a certain volume when the instructions on the back panel are followed and/or when a purchaser seeks to obtain "best results" as instructed and advertised by Monsanto.

97.   Plaintiff suffered injury in fact as a result of Monsanto's actions as set forth herein because plaintiff purchased Roundup Super Concentrate in reliance on Monsanto's false and misleading marketing claims that the products "Make Up To" a certain volume, by gallons, of product that is efficacious at killing all weeds and grass.

98.   Monsanto's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Monsanto has advertised the Roundup Concentrates in a manner that is untrue and misleading, which Monsanto knew or reasonably should have known.

99.   Monsanto profited from its sales of the falsely and deceptively advertised Roundup Concentrates to unwary consumers.

100.   As a result, pursuant to Cal. Bus. & Prof. Code § 17535, plaintiff and the Subclass are entitled to injunctive and equitable relief and restitution.

### FOURTH CAUSE OF ACTION

### Violations of the Unfair Competition Law,

### Cal. Bus. & Prof. Code § 17200 *et seq.*

### (By the California Subclass)

101.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

102.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

103.   The acts, omissions, misrepresentations, practices, and non-disclosures of Monsanto as alleged herein constitute business acts and practices.

### Fraudulent

104.   A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test.

105.   As set forth herein, the Monsanto's claims relating to the Roundup Concentrate products are likely to deceive reasonable consumers and the public.

**Unlawful**

106.   The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and
- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*.

**Unfair**

107.   Monsanto's conduct with respect to the labeling, advertising, and sale of the Roundup Concentrates was unfair because Monsanto's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

108.   Monsanto's conduct with respect to the labeling, advertising, and sale of Roundup Concentrates was also unfair because it violated public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the False Advertising Law.

109.   Monsanto's conduct with respect to the labeling, advertising, and sale of Roundup Concentrates was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

*            *            *

110.   Monsanto profited from its sale of the falsely, deceptively, and unlawfully advertised Roundup Concentrate to unwary consumers.

111.   Plaintiff and Subclass members are likely to be damaged by Monsanto's deceptive trade practices, as Monsanto continues to disseminate, and is otherwise free to continue to disseminate misleading information. Thus, injunctive relief enjoining this deceptive practice is proper.

112.   Monsanto's conduct caused and continues to cause substantial injury to plaintiffs and the other Subclass Members, who have suffered injury in fact as a result of Monsanto's fraudulent, unlawful, and unfair conduct.

24

113.   In accordance with Bus. & Prof. Code § 17203, plaintiff, on behalf of herself, the Subclass, and the general public, seeks an order enjoining Monsanto from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

114.   Plaintiff, on behalf of herself and the Subclass also seeks an order for the restitution of all monies from the sale of the Roundup Concentrates that Monsanto unjustly acquired through acts of unlawful competition.

**FOURTH CAUSE OF ACTION**

**Breaches of Express Warranties,**

**Cal. Com. Code § 2313(1)**

**(By the Subclass)**

115.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

116.    Through the Roundup Concentrates' labels, Monsanto made affirmations of fact or promises, or description of goods, that, *inter alia*, the products will yield a certain number of gallons in volume when used in an ordinary and reasonable manner, that the products will yield a certain number of gallons in volume if the instructions for mixing on the back panel were followed, and that the products would be effective in killing all weeds and grass. These and other representations were part of the basis of the bargain, in that plaintiff and the Subclass purchased the Roundup Concentrates in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

117.   Monsanto breached its express warranties by selling Roundup Concentrates that cannot yield the promised volume in gallons when used reasonably and ordinarily, cannot yield the promised volume in gallons when mixed according to the instructions on the back panel or by a purchaser seeking "best results" as instructed by Monsanto, and which is not effective at killing weeds and grass when mixed to the stated volume on the labels and/or pamphlets.

*Martin v. Monsanto Company*, Case No. 16-cv-2168

CLASS ACTION COMPLAINT

118.   That breach actually and proximately caused injury in the form of the lost purchase price, or some portion thereof, that plaintiff and Subclass members paid for Roundup Concentrates.

119.   As a result, plaintiff seeks, on behalf of herself and other Subclass members, actual damages arising as a result of Monsanto's breaches of express warranty.

**FIFTH CAUSE OF ACTION**

**Breach of Implied Warranty of Merchantability,**

**Cal. Com. Code § 2314**

**(By the California Subclass)**

120.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

121.   Monsanto, through its acts set forth herein, in the sale, marketing, and promotion of the Roundup Concentrates, made representations to plaintiff and the Subclass that, among other things, the products yield a certain volume by gallons of product that is effective at killing all weeds and grass.

122.   Monsanto is a merchant with respect to the goods of this kind which were sold to plaintiff and the Subclass, and there was, in the sale to plaintiff and other consumers, an implied warranty that those goods were merchantable.

123.   However, Monsanto breached that implied warranty in that Roundup Concentrates do not yield the volume by gallons and are not effective at killing all weeds and grass to the extent claimed, as set forth in detail herein.

124.   As an actual and proximate result of Monsanto's conduct, plaintiff and the Subclass did not receive goods as impliedly warranted by Monsanto to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

125.   Plaintiff and the Subclass have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of Roundup Concentrates' purchase price, or some portion thereof.

## **PRAYER FOR RELIEF**

126.   Wherefore, plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for judgment against Monsanto as to each and every cause of action, and the following remedies:

a.      An Order declaring this action to be a proper class action, appointing plaintiff as class representative, and appointing her undersigned counsel as class counsel;

b.      An Order requiring Monsanto to bear the cost of class notice;

c.      An Order enjoining Monsanto from engaging in the unfair, unlawful, and deceptive business practices and false advertising complained of herein;

d.      An Order compelling Monsanto to conduct a corrective advertising campaign;

e.      An Order compelling Monsanto to recall and destroy all misleading and deceptive advertising materials and product labels;

f.      An Order requiring Monsanto to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

g.      An Order requiring Monsanto to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, plus pre-and post-judgment interest thereon;

h.      An Order requiring Monsanto to pay all actual and statutory damages permitted under the causes of action alleged herein;

i.      An award of attorneys' fees and costs; and

j.      Any other and further relief that Court deems necessary, just, or proper.

///
///
///
///

*Martin v. Monsanto Company*, Case No. 16-cv-2168
CLASS ACTION COMPLAINT

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 13, 2016          /s/ Jack Fitzgerald

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**JACKSON & FOSTER, LLC**
SIDNEY W. JACKSON, III (*phv* application to be filed)
75 St. Michael Street
Mobile, Alabama 36602
Phone: (251) 433-6699
Fax: (251) 433-6127

***Attorneys for Plaintiffs and the Proposed Class***