**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**JACKSON & FOSTER, LLC**
SIDNEY W. JACKSON, III (admitted *pro hac vice*)
75 St. Michael Street
Mobile, Alabama 36602
Phone: (251) 433-6699
Fax: (251) 433-6127

***Counsel for Plaintiff and the Putative Class***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISABETH MARTIN, on behalf of herself, all others similarly situated, and the general public,<br><br>      Plaintiff,<br><br>   v.<br><br>MONSANTO COMPANY,<br><br>      Defendant. | Case No.: 5:16-cv-02168-JFW (SPx)<br><br>**PLAINTIFF'S OPPOSITION TO MONSANTO'S MOTION TO DISMISS**<br><br>Date:      January 23, 2017<br>Time:      1:30 p.m.<br>Judge:     Hon. John F. Walter<br>Location:  Courtroom 7A, 7th Floor |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

FACTS ........................................................................................1

ARGUMENT .................................................................................4

I.    PLAINTIFF'S CLAIMS ARE NOT EXPRESSLY PREEMPTED ...................4

    A.    To Invalidate Plaintiff's Claims, Monsanto Bears a
        "Considerable Burden" of Overcoming the Strong Presumption
        Against Preemption ...................................................................4

    B.    Under the Ninth Circuit's Controlling Decision in *Reid v.
        Johnson & Johnson*, Only Agency Action Sufficiently Formal
        to Warrant *Chevron* Deference has the "Force of Law"
        Necessary to Preempt State Law ..................................................5

    C.    Because it was Not the Result of a Formal, Deliberative Process
        Akin to Notice-and-Comment Rulemaking, EPA's Approval of
        the Roundup Concentrate Labels Does Not Preempt Plaintiff's
        Claims.......................................................................................7

        1.    The Volume of EPA's Label Reviews Illustrates that
            Each Individual Approval Cannot be the Result of a
            Formal, Deliberative Process.............................................7

        2.    EPA Did Not Approve the Roundup Concentrates' Final,
            Printed Labeling................................................................8

        3.    That EPA Anticipates Deceptive Labeling Will Reach
            Consumers Demonstrates its Review is Not Formal and
            Deliberative....................................................................10

    D.    Plaintiff's Claims Seek to Impose Requirements Identical to
        FIFRA.......................................................................................11

II.   THE COURT SHOULD NOT EQUITABLY ABSTAIN FROM
    ADJUDICATING MONSANTO'S UCL LIABILITY ....................................12

i

*Martin v. Monsanto Company*, Case No. 5:16-cv-02168-JFW (SPx)
OPPOSITION TO MOTION TO DISMISS

III.    PLAINTIFF STATES CONSUMER FRAUD CLAIMS ..............................14

IV.    PLAINTIFF STATES STATE & FEDERAL WARRANTY CLAIMS ..........17

        A.    Plaintiff States a Breach of Express Warranty Claim............................17

        B.    Plaintiff States a Breach of Implied Warranty Claim ............................18

        C.    Plaintiff States a Magnuson-Moss Warranty Act Claim .......................19

V.    PLAINTIFF MAY ASSERT CLAIMS ON BEHALF OF ROUNDUP
        CONCENTRATE PLUS PURCHASERS BECAUSE THE
        PRODUCTS, LEGAL CLAIMS, & INJURIES SUFFERED ARE
        SUBSTANTIALLY SIMILAR ..........................................................................21

VI.    PLAINTIFF HAS STANDING TO PURSUE INJUNCTIVE RELIEF...........23

CONCLUSION ..........................................................................................................25

*Martin v. Monsanto Company*, Case No. 5:16-cv-02168-JFW (SPx)
OPPOSITION TO MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acedo v. DMAX, Ltd.*,
    2015 WL 1269176 (C.D. Cal. Nov. 13, 2015)...................................................19

*Allen v. Hylands, Inc.*,
    2012 WL 1656750 (C.D. Cal. May 2, 2012) ....................................................18

*Altria Group, Inc. v. Good*,
    555 U.S. 70 (2008)............................................................................................5

*Alvarado v. Selma Convalescent Hosp.*,
    153 Cal. App. 4th 1292 (2007) .......................................................................13

*Arce v. Kaiser Found. Health Plan, Inc.*,
    181 Cal. App. 4th 471 (2010) .........................................................................14

*Arevalo v. Bank of Am. Corp.*,
    850 F. Supp. 2d 1008 (N.D. Cal. 2011) ..........................................................21

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
    2012 WL 2990766 (N.D. Cal. July 20, 2012)..................................................23

*Bates v. Dow Agrosciences, LLC*,
    544 U.S. 431 (2005)........................................................................................5, 9

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ..........................................................................18

*Brazil v. Dole Food Co., Inc.*,
    2013 WL 5312418 (N.D. Cal. Sep. 23, 2013) ......................................21, 22, 23

*Bruno v. Quten Research Inst., LLC*,
    280 F.R.D. 524 (C.D. Cal. 2011) ...............................................................15, 21

*Carias v. Monsanto Co.*,
    --- F. Supp. 3d ----, 2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016) ........7, 11, 12

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
    2011 WL 159380 (N.D. Cal. Jan. 10, 2011)....................................................23

*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ............................................................ 14

*Chae v. SLM Corp.*,
    593 F.3d 936 (9th Cir. 2010) ............................................................................. 4

*Chester v. TJX Cos., Inc.*,
    2016 WL 4414768 (C.D. Cal. Aug. 18, 2016) ......................................... 21, 25

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992) ........................................................................................... 5

*Circle Click Media LLC v. Regus Mgmt. Group LLC*,
    2016 WL 3879028 (N.D. Cal. July 18, 2016) ................................................. 25

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ........................................................................ 19

*Cortina v. Wal-Mart, Inc.*,
    2015 WL 260913 (S.D. Cal. Jan. 20, 2015) .................................................... 21

*Coyle v. Hornell Brewing Co.*,
    2010 WL 2539386 (D.N.J. June 15, 2010) ...................................................... 13

*Dorsey v. Rockhard Labs., LLC*,
    2014 WL 4678969 (C.D. Cal. Sept. 19, 2014) ................................................ 22

*Dysthe v. Basic Research LLC*,
    2011 WL 5868307 (C.D. Cal. June 13, 2011) ................................................. 23

*Ellis v. J.P. Morgan Chase & Co.*,
    950 F. Supp. 2d 1062 (N.D. Cal. 2013) ........................................................... 12

*Fellner v. Tri-Union Seafoods, LLC*,
    539 F.3d 237 (3d Cir. 2008) .......................................................................... 6, 7

*Fink v. Time Warner Cable*,
    837 F. Supp. 2d 279 (S.D.N.Y. 2011) ....................................................... 16, 17

*Forcellati v. Hyland's, Inc.*,
    876 F. Supp. 2d 1155 (C.D. Cal. 2012) ........................................................... 22

iv

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ........................................................................14

*Frenzel v. AliphCom*,
   2015 WL 4110811 (N.D. Cal. July 7, 2015)................................................17

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)....................................................................................21

*Giglio v. Monsanto Co.*,
   2016 WL 1722859 (S.D. Cal. Apr. 29, 2016)............................................11

*Greenwood v. CompuCredit Corp.*,
   2010 WL 4807095 (N.D. Cal. Nov. 19, 2010)...........................................21

*Ham v. Hain Celestial Group, Inc.*,
   70 F. Supp. 3d 1188 (N.D. Cal. 2014).......................................................18

*Hardeman v. Monsanto Co.*,
   2016 WL 1749680 (N.D. Cal. Apr. 8, 2016).........................................7, 12

*Harris v. Las Vegas Sands LLC*,
   2013 WL 5291142 (C.D. Cal. Aug. 16, 2013)...........................................25

*Hauter v. Zogarts*,
   14 Cal. 3d 104 (1975) ...............................................................................18

*Henderson v. Gruma Corp.*,
   2011 WL 1362188 (C.D. Cal. Apr. 22, 2011) ..........................................25

*Herron v. Best Buy Co. Inc.*,
   924 F. Supp. 2d 1161 (E.D. Cal. 2013) ....................................................16

*Hofmann v. Fifth Generation, Inc.*,
   2015 WL 7430801 (S.D. Cal. Nov. 20, 2015).......................................8, 11

*Hunter v. Nature's Way Prods., LLC*,
   2016 WL 4262188 (S.D. Cal. Aug. 12, 2016)...........................................22

*In re Apple iPhone 3G Prods. Liab. Litig.*,
   859 F. Supp. 2d 1084 (N.D. Cal. 2012).....................................................19

v

*In re ConAgra Foods Inc.*,
   908 F. Supp. 2d 1090 (C.D. Cal. 2012) ................................................. 20

*In re ConAgra Foods, Inc.*,
   302 F.R.D. 537 (C.D. Cal. 2014) ........................................................... 24

*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015) .................................................... 17

*In re Farm Raised Salmon Cases*,
   42 Cal. 4th 1077 (2008) ......................................................................... 5

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011) ................................... 8, 14, 18, 19

*Johns v. Bayer Corp.*,
   2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ........................................... 23

*Jones v. ConAgra Foods, Inc.*,
   2014 WL 2702726 (N.D. Cal. June 13, 2014) ...................................... 24

*Jones v. Nutiva, Inc.*,
   2016 WL 5210935 (N.D. Cal. Sept. 22, 2016) ................................. 19, 22

*Kabbash v. Jewelry Channel, Inc. USA*,
   2015 WL 6690236 (C.D. Cal. Nov. 2, 2015) ........................................ 25

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) ......................................................................... 14

*Khoday v. Symantec Corp.*,
   2014 WL 1281600 (D. Minn. Mar. 13, 2014) ...................................... 15

*Klein v. Chevron U.S.A., Inc.*,
   202 Cal. App. 4th 1342 (2012) ....................................................... 13, 14

*Lilly v. Jamba Juice Co.*,
   2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ...................................... 24

*Maloney v. Verizon Internet Servs., Inc.*,
   413 Fed. Appx. 997 (9th Cir. 2011) ..................................................... 16

vi

*McKell v. Wash. Mut., Inc.*,
    142 Cal. App. 4th 1457 (2006) ........................................................15

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ..........................................................................5

*Mendoza v. Monsanto Co.*,
    2016 WL 3648966 (E.D. Cal. July 8, 2016) .................................11

*Miller v. Ghirardelli Chocolate Co.*,
    912 F. Supp. 2d 861 (N.D. Cal. 2012) ..........................................22

*Perez v. Monster Inc.*,
    149 F. Supp. 3d 1176 (N.D. Cal. 2016) .........................................20

*Reid v. Johnson & Johnson*,
    2012 WL 4108114 (S.D. Cal. Sept. 18, 2012).................................6

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ...........................................1, 6, 7, 16

*Reudy v. Clear Channel Outdoor, Inc.*,
    428 Fed. Appx. 774 (9th Cir. 2011).........................................12, 13

*Rex v. Chase Home Fin. LLC*,
    905 F. Supp. 2d 1111 (C.D. Cal. 2012) ....................................12, 14

*Ries v. Ariz. Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012).................................................24

*Ruszecki v. Nelson Bach USA Ltd.*,
    2015 WL 6750980 (S.D. Cal. June 25, 2015)...........................20, 21

*Samura v. Kaiser Found. Health Plan, Inc.*,
    17 Cal. App. 4th 1284 (1993) ......................................................13

*Sandoz, Inc. v. Richardson-Vicks, Inc.*,
    902 F.2d 222 (3d Cir. 1990).........................................................13

*Schimmer v. Jaguar Cars, Inc.*,
    384 F.3d 402 (7th Cir. 2004) .......................................................19

*Shamsian v. Dep't of Conservation*,
    136 Cal. App. 4th 621 (2006) ............................................................... 13

*Sheppard v. Monsanto Co.*,
    2016 WL 3629074 (D. Haw. June 29, 2016) ................................... 7, 11

*Shimono v. Harbor Freight Tools USA, Inc.*,
    2016 WL 6238483 (C.D. Cal. Oct. 24, 2016) ...................................... 24

*Skelton v. Gen. Motors Corp.*,
    660 F.2d 311 (7th Cir. 1981) ............................................................... 20

*Stengel v. Medtronic Inc.*,
    704 F.3d 1224 (9th Cir. 2013) ............................................................... 5

*Strumlauf v. Starbucks Corp.*,
    2016 WL 3361842 (N.D. Cal. June 17, 2016) ..................................... 24

*Thesier-Hendricks v. TJL Enters., Inc.*,
    2015 WL 10791893 (C.D. Cal. Aug. 3, 2015) ..................................... 18

*United States v. Locke*,
    529 U.S. 89 (2000) ................................................................................. 5

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) ............................................................................ 6, 7

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ........................................................... 14, 15

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ............................................................................... 5

*Yumul v. Smart Balance, Inc*.,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ............................................... 15


**Statutes**

15 U.S.C. §§ 2301 *et seq*. .......................................................................... 4

*Martin v. Monsanto Company*, Case No. 5:16-cv-02168-JFW (SPx)
OPPOSITION TO MOTION TO DISMISS

15 U.S.C. § 2301(6) ................................................................................................20

15 U.S.C. § 2301(6)(A) .........................................................................................20

15 U.S.C. § 2301(6)(B) .........................................................................................20

15 U.S.C. § 2301(7) ................................................................................................20

15 U.S.C. § 2310(d)(1) ....................................................................................19, 20

7 U.S.C. § 136(q)(1)(A) .........................................................................................11

7 U.S.C. § 136a(f)(1) ................................................................................................7

7 U.S.C. § 136a(f)(2) ..............................................................................................12

7 U.S.C. § 136d(b) ..................................................................................................10

7 U.S.C. § 136v(a) ..................................................................................................11

7 U.S.C. § 136v(b) ..................................................................................................11

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ...............................................................4

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ...............................................................4

Cal. Civ. Code §§ 1750 *et seq.* ...............................................................................4

Cal. Com. Code § 2313 .............................................................................................4

Cal. Com. Code § 2313(1)(a) .................................................................................17

Cal. Com. Code § 2313(1)(b) .................................................................................17

Cal. Com. Code § 2314 .............................................................................................4

Cal. Com. Code § 2314(2)(c) .................................................................................18

Cal. Com. Code § 2314(2)(f) .................................................................................18

*Martin v. Monsanto Company*, Case No. 5:16-cv-02168-JFW (SPx)
OPPOSITION TO MOTION TO DISMISS

**Regulations**

40 C.F.R. § 152.108 ..............................................................................7, 8, 9

40 C.F.R. § 152.130 ....................................................................................7

40 C.F.R. § 152.20 ....................................................................................10

40 C.F.R. § 152.25 ....................................................................................10

40 C.F.R. § 152.25(f)(3)(iv) .....................................................................10

40 C.F.R. § 152.30 ....................................................................................10

40 C.F.R. § 152.46 ....................................................................................10

40 C.F.R. § 152.50(e) ..................................................................................8

40 C.F.R. § 156.10(a)(5) .......................................................................8, 11

40 C.F.R. § 156.10(a)(6)(i) .........................................................................8

40 C.F.R. § 158.640(b)................................................................................9

Monsanto provides no salient reason for granting dismissal. Plaintiff's claims are not preempted because agency pre-market label reviews and approvals are insufficiently formal to have preemptive effect under the Ninth Circuit's controlling decision in *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015). Absent preemption, the Court should not indulge Monsanto's request to reach the same result through equitable abstention. Plaintiff also states plausible claims for consumer fraud and breach of warranty. Neither Monsanto's use of the phrase "up to," nor supposedly curative information hidden from consumers until after the purchase negates the deception caused by the labeling of the accused Roundup Super Concentrate and Roundup Concentrate Plus products. Because Monsanto's behavior was the same toward purchasers of both versions and injured them in the same manner—and because any product differences are immaterial to plaintiff's classwide claims—plaintiff may represent purchasers of both versions. And since plaintiff would purchase the products in the future if the deception is corrected, is likely to be injured absent an injunction, and represents unaware class members, she has standing to pursue injunctive relief.

## **FACTS**

Monsanto manufactures and markets Roundup, an herbicide whose active ingredient is glyphosate. (Dkt. No. 19, First Am. Compl. ("FAC") ¶ 10.[1]) In addition to "Ready-to-Use" formulations, Monsanto sells concentrated versions, which must be diluted with water to make a solution for use in a tank or other sprayer. (¶ 11.) At issue here are Roundup Weed & Grass Killer Concentrate Plus ("Concentrate Plus") and Roundup Weed & Grass Killer Super Concentrate ("Super Concentrate") (together, the "Roundup Concentrates"). (¶ 1.) Monsanto sells these Roundup Concentrates in seven different bottle sizes. The principal display panel on each prominently claims the product "Makes Up to" a certain number of gallons (referred to sometimes herein as Monsanto's "gallons statement"), as follows:

| Concentrate Plus Singles – 18 fl. oz. | "Makes Up to **6 Gallons**" |
| Concentrate Plus – 32 fl. oz. | "Makes Up to **10 Gallons**" |
| Concentrate Plus – 36.8 fl. oz. | "Makes Up to **12 Gallons**" |

---

[1] Throughout the brief, "¶ _" indicates a citation to the FAC.

| Concentrate Plus – 64 fl. oz. | "Makes Up to **21 Gallons**" |
| Super Concentrate – 35.2 fl. oz. | "Makes Up to **23 Gallons**" |
| Super Concentrate – 64 fl. oz. | "Makes Up to **42 Gallons**" |
| Super Concentrate – 128 fl. oz. | "Makes Up to **85 Gallons**" |

(¶ 13.) The front label also says the product "KILLS THE ROOTS GUARANTEED." (¶¶ 13-14.) The back label displays a graphic providing information under three headings: "Where to Use," "What to Know," and "How to Use." (¶¶ 16-17.) The "Where to Use" section advertises the product's uses as "Around Flower Beds," "Around Trees," "Driveways & Walkways," and "Along Fences." The "How to Use" section states, "Use a Tank Sprayer," and "Add 6 fl oz Per Gallon of Water" for Concentrate Plus, or "2 ½ fl oz Per Gallon of Water" for Super Concentrate. (¶¶ 17-18.)

Given the products' net contents and Monsanto's "How to Use" dilution instructions, Monsanto's gallons statement represents that the Roundup Concentrates are capable of making for the advertised uses about *double* what they are actually capable of making.

| Product | "Makes Up to" Promise | Back Label Dilution Instruction (Oz. to Mix with 1 Gallon of Water) | Amount Made Following Back Label Dilution Instruction | % Short of Promise |
|---|---|---|---|---|
| Concentrate Plus – 18 fl. oz. | 6 gal. | 6 fl. oz. | 3 gal. | 50% |
| Concentrate Plus – 32 fl. oz. | 10 gal. | 6 fl. oz. | 5.33 gal. | 46.7% |
| Concentrate Plus – 36.8 fl. oz. | 12 gal. | 6 fl. oz. | 6.13 gal. | 48.9% |
| Concentrate Plus – 64 fl. oz. | 21 gal. | 6 fl. oz. | 10.67 gal. | 49.1% |
| Super Concentrate – 35.2 fl. oz. | 23 gal. | 2 ½ fl. oz. | 14.08 gal. | 38.7% |
| Super Concentrate – 64 fl. oz. | 42 gal. | 2 ½ fl. oz. | 25.6 gal. | 39% |
| Super Concentrate – 128 fl. oz. | 85 gal. | 2 ½ fl. oz. | 51.2 gal. | 39.8% |

(¶ 19.) Sealed tightly closed on the back label is a pamphlet that includes directions for use. (¶ 20.) Only with careful effort can it be removed and opened without being torn. (¶ 21.) Thus, most reasonable consumers would not feel permitted to unseal the pamphlet before purchasing and, accordingly, the vast majority of purchasers do not see any information in the pamphlet prior to purchase. (¶ 22.) This includes plaintiff. (¶ 35.) Nevertheless, it is only through a careful review of the pamphlet, by noticing a "fine print" instruction, that a

2

purchaser *might* see Monsanto's inconsistent statement that accounts for its overstating the number of gallons of spray solution the products make. (¶ 24.) Under the heading "MIXING INSTRUCTIONS," Monsanto states that, "For best results," the purchaser must use the same dilution provided on the back label, *i.e.*, 6 oz. per gallon for Concentrate Plus, and 2 ½ oz. per gallon for Super Concentrate. (¶ 26.) Further down, Monsanto advises, "For easy to kill weeds such as seedlings," adding about half that amount to 1 gallon of water, *i.e.*, 3 oz. per gallon for Concentrate Plus, and 1 ½ oz. per gallon for Super Concentrate. (¶ 27.) This is the only reference the products' labeling makes to the possibility of using a greater dilution than set forth on the back label for the advertised uses. (*Id.*)

Plaintiff purchased 35.2 oz. and/or 64 oz. bottles of Super Concentrate on at least three occasions, most recently in early 2016. (¶¶ 33-34.) She relied on Monsanto's statement that the product "Makes up to 23 gallons" or "42 gallons," which she took to mean that the product would, in fact, make 23 gallons or 42 gallons when used as directed, for the uses advertised on the label. (¶ 36.) Plaintiff diluted the product according to the instructions prominently displayed on the back label. (¶ 35.) Accordingly, rather than obtain 23 or 42 gallons of Roundup as promised, plaintiff got just 14 or 25 gallons. (*See* ¶¶ 19, 38.)

By representing the *amount* of spray solution plaintiff was supposedly buying, Monsanto also implicitly represented the product's *value*. Plaintiff purchased Super Concentrate, rather than Ready-to-Use Roundup, because she understood that it offered a better dollar-per-gallon-of-spray-solution value than Ready-to-Use Roundup. That representation was false because, based on Monsanto's dilution instructions for the advertised uses, the Super Concentrate was under-filled, and plaintiff was shorted, receiving a different and substantially lesser price-per-gallon value than Monsanto represented. (¶¶ 37, 39.)

Plaintiff was injured by Monsanto's false promise. Her expectations were not met when she received just a portion of what she had bargained for and bought. (*Id.*) And she paid substantially more than the per-gallon price market value on which she and Monsanto agreed. That is, while plaintiff bargained with Monsanto on a particular market value for a certain number of gallons of solution, Monsanto delivered only a portion of those gallons. Thus,

3

plaintiff paid a significantly higher price-per-gallon than reflected in the market price she and Monsanto agreed to, and received an amount of gallons significantly lower than Monsanto promised. The product was therefore worth less than plaintiff paid for it. (¶ 40.)

By using the misleading gallons statement, Monsanto obtained enhanced negotiating leverage over plaintiff and other class members, commanding a price for the Roundup Concentrates that class members would not have paid had they been fully informed. Specifically, plaintiff and other class members would have paid approximately 50% less for Concentrate Plus, and 40% less for Super Concentrate, had they paid the agreed-upon per-gallon market price for the number of gallons they actually received. (¶ 41; Table *supra* p. 2.)

Plaintiff filed this suit "to enjoin Monsanto from continuing to falsely advertise the Roundup Concentrates in this manner, and to recover restitution and damages for herself and other purchasers." (¶ 4.) She brings claims on behalf of a class for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* ("MMWA"), California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"), and California Unfair Competition Law, *id.* §§ 17200 *et seq.* ("UCL"), and for breach of express and implied warranties, Cal. Com. Code §§ 2313 & 2314. (¶¶ 48, 58-111.)

## **ARGUMENT**

## I.   **PLAINTIFF'S CLAIMS ARE NOT EXPRESSLY PREEMPTED**

### A.   **To Invalidate Plaintiff's Claims, Monsanto Bears a "Considerable Burden" of Overcoming the Strong Presumption Against Preemption**

Pursuant to the Supremacy Clause, federal law preempts state law when Congress enacts a statute that explicitly preempts state law. *See Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (citation omitted). There are two "cornerstones" of preemption jurisprudence:

First, the purpose of Congress is the ultimate touchstone in every pre-emption case. . . . Second, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, [courts] start with the assumption that the historic police powers of

4

the States were not to be superseded by the Federal Act unless that was the

clear and manifest purpose of Congress.

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotations, citations and alterations omitted); *c.f. Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("Congress does not cavalierly pre-empt state-law causes of action.") This presumption demands courts give preemption statutes "narrow reading[s]." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992). Thus, where a federal law contains an express preemption clause, "it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008). "The appropriate inquiry [is] whether the purposes and objectives of the federal statute[] . . . are consistent with concurrent state regulation." *United States v. Locke*, 529 U.S. 89, 115 (2000). Moreover, where there are "plausible alternative reading[s]" of an express preemption provision, courts "have a ***duty*** to accept the reading that disfavors pre-emption." *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 449 (2005) (emphasis added).

As a result, "[p]arties seeking to invalidate a state law based on preemption 'bear the considerable burden of overcoming "the starting presumption that Congress does not intend to supplant state law.""" *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013) (quotation and citation omitted). The strong presumption against preemption "applies with particular force when Congress has legislated in a field traditionally occupied by the States." *Altria Group*, 555 U.S. at 77. "[C]onsumer protection laws such as the UCL, false advertising law, and CLRA, are within the states' historic police powers and therefore are subject to the presumption against preemption." *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088 (2008) (internal quotations, citation and alterations omitted).

**B.    Under the Ninth Circuit's Controlling Decision in *Reid v. Johnson & Johnson*, Only Agency Action Sufficiently Formal to Warrant *Chevron* Deference has the "Force of Law" Necessary to Preempt State Law**

"Because the Supremacy Clause privileges only '[l]aws of the United States,' an agency pronouncement must have the force and effect of federal law to have preemptive

5

force." *Reid*, 780 F.3d at 964 (citations omitted). In *Reid*, defendant argued an FDA letter preempted plaintiff's false advertising claims, and the district court agreed. *Reid v. Johnson & Johnson*, 2012 WL 4108114, at *5-11 (S.D. Cal. Sept. 18, 2012). The Ninth Circuit reversed. Noting "only '[l]aws of the United States'" can preempt state law, the court held "an agency pronouncement must have the force and effect of federal law to have preemptive force." 780 F.3d at 963-64. In an analogous context, "only those agency pronouncements that Congress intended to carry the 'force of law' require *Chevron*-level deference, and [courts] determine whether an agency spoke with such force under the standard set forth in *United States v. Mead Corp.*, 533 U.S. 218, 234[ ] (2001), and its progeny." *Id.* at 964. Since "[c]reation of federal law should demand at least the same formality for purposes of preemption as it does for purposes of *Chevron* deference," courts must "declin[e] to afford preemptive effect to agency actions that do not carry the force of law under *Mead* and its progeny." *Id.* (citing *Fellner v. Tri-Union Seafoods, LLC*, 539 F.3d 237, 244 (3d Cir. 2008)).

Formal regulatory processes like notice and comment rulemaking generally create federal "law" with preemptive effect. *Fellner*, 539 F.3d at 244. While "federal agency orders resulting from quasi-judicial agency proceedings may constitute 'federal law'" where there is a "formal adjudicatory proceeding[]" at which the agency "clearly and publicly state[s] its position," *id.* at 244-45 (citations and internal quotation marks omitted), "[t]his does not mean . . . that federal law capable of preempting state law is created every time someone acting on behalf of an agency makes a statement or takes an action within the agency's jurisdiction," *id.* at 245. Instead, "Congress contemplates administrative action with the effect of law [only] when it provides for a relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force." *Id.* (quoting *Mead*, 533 U.S. at 230). "Regularity of procedure . . . imposes a degree of accountability on decisions which will have the profound effect of displacing state laws, and affords some protection to the states that will have their laws displaced and to citizens who may hold rights or expectations under those laws." *Id.* Thus, "[c]ourts with good reason are wary of affording preemptive force to actions taken under more informal circumstances," and should "decline

6

to afford preemptive effect to less formal measures lacking the 'fairness and deliberation' which would suggest that Congress intended the agency's action to be a binding and exclusive application of federal law." *Id.* (citations omitted). Applying this reasoning, the Ninth Circuit in *Reid* held that an FDA letter "lacks preemptive effect," because "'enforcement guidelines' . . . 'are beyond the *Chevron* pale.'" 780 F.3d at 964 (quoting *Mead*, 533 U.S. at 234).

### C. Because it was Not the Result of a Formal, Deliberative Process Akin to Notice-and-Comment Rulemaking, EPA's Approval of the Roundup Concentrate Labels Does Not Preempt Plaintiff's Claims

"[F]ive district courts presiding over similar 'Roundup' cases in the Ninth Circuit have rejected the same arguments pressed by defendant here, concluding that none of the EPA's actions cited by defendant," including EPA approval of the Roundup label, "preempted the plaintiffs' state-law damages suits," *Carias v. Monsanto Co.*, --- F. Supp. 3d ----, 2016 WL 6803780, at *2 (E.D.N.Y. Sept. 30, 2016) (collecting cases); *see also Sheppard v. Monsanto Co.*, 2016 WL 3629074, at *7–9 (D. Haw. June 29, 2016) (claims that Roundup was misbranded in part because its label was "false or misleading in any particular" were not preempted by EPA's registration or pronouncement); *Hardeman v. Monsanto Co.*, 2016 WL 1749680, at *2 (N.D. Cal. Apr. 8, 2016) ("there's no indication that the EPA's approval of Roundup's label had the force of law" (citing *Mead*, 533 U.S. at 229; *Reid*, 780 F.3d at 964)).

### 1. The Volume of EPA's Label Reviews Illustrates that Each Individual Approval Cannot be the Result of a Formal, Deliberative Process

In *Mead*, the Supreme Court held "any suggestion that rulings intended to have the force of law are being churned out at a rate of 10,000 a year . . . is self-refuting." 533 U.S. at 219. Yet this is precisely what EPA does with herbicide registrations. Since the inception of FIFRA, EPA has approved registration for at least 407,383 products (RJN Fact 1), equating to more than 5,800 product approvals per year. And these products' registrations must be amended upon certain labeling and formulation changes, requiring additional EPA approval. *See*, *e.g.*, 7 U.S.C. § 136a(f)(1); 40 C.F.R. §§ 152.130, 152.108. For example, Concentrate Plus has required 17 different submissions, and Super Concentrate 13 different submissions.

7

(RJN Facts 2-3.) Thus, EPA churns out far too many approvals to be able to engage in "a formal, deliberative process akin to notice and comment rulemaking or an adjudicative enforcement action" for each one. *See Hofmann v. Fifth Generation, Inc.*, 2015 WL 7430801, at *6 (S.D. Cal. Nov. 20, 2015) (agency approval of vodka label did not bar false advertising claims because "the sheer number of rulings undermines entitlement to *Chevron* deference").

## 2. EPA Did Not Approve the Roundup Concentrates' Final, Printed Labeling

Even more fatal to Monsanto's preemption argument is that EPA does "not approve final printed labeling," 40 C.F.R. § 152.108. As Monsanto concedes, "[i]n the registration application, manufacturers submit draft label language" only (Mot. at 7; *see also* 40 C.F.R. § 152.50(e)), and "final printed labeling need not be submitted until draft label texts have been provisionally accepted by the agency." 40 C.F.R. § 156.10(a)(6)(i). Instead, the Agency only "selectively review[s] [final printed labeling] for compliance." *Id.* For example, after stating that Monsanto's draft labeling was acceptable, EPA requested it "[s]ubmit one copy of the final printed label for the record before you release the product for shipment" (RJN Fact 4).

This is particularly damning to Monsanto's preemption argument because its draft labels included a wide variety of "optional" "wording," "text," "illustrations," "sections," and "alternate text," and a variety of "place holder[s]" for other information. (*See* Dkt. Nos. 26-3, 26-4.) With so many empty place holders and optional claims, EPA cannot possibly determine what the final printed label will look like, much less evaluate whether it is "false or misleading in any particular," 40 C.F.R. § 156.10(a)(5), in the "context of the packaging as a whole." *See In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1116 (S.D. Cal. 2011).

Indeed, from the EPA submissions on which Monsanto relies (Dkt. Nos. 26-3, 26-4), it is clear EPA never evaluated Monsanto's gallons statement in the context in which it was presented to consumers. Unlike the labeling plaintiff challenges—which prominently displays the gallons statement on the front panel, *separated from the supposedly curative instructions* for "easy to kill weeds" buried inside a pamphlet consumers are unlikely to ever read—the draft labeling approved by EPA shows the gallons statement displayed *with the*

8

supposedly curative information. (*See* Dkt. No. 26-3, at p. 4 of 19 (Concentrate Plus draft labeling showing "Makes up to [ ] gallons" claim *on the same panel* as "AMOUNT TO USE" instructions that—unlike the products' final printed labels—advise users *in the same place* to add "6 fl oz [ ] per gallon of water" "[f]or best results," but "[f]or easy to kill weeds such as (small) seedlings, add 3 fl oz [ ] (per gallon) . . . of water.").[2]) Thus, even if EPA evaluated whether it would be false and misleading to present the gallons statement *alongside* the supposedly curative information, it has never evaluated the label that plaintiff challenges, with the supposedly curative information separated and buried inside a pamphlet.

But even if EPA happened to review the final printed Roundup Concentrates' labels as part of its post-marketing "selective[ ] review . . . for compliance," 40 C.F.R. § 152.108— and there is no indication that it did—*not a single one* of the submitted labels included the "prominent labeling claim near the top of the front of the bottle," nor anywhere else on "[t]he principal display panel" (¶ 36). (*Compare* RJN Facts 7-12, Persinger Decl. Exs. F-K *with* FAC ¶¶ 2, 12.) Moreover, even a review of the final, printed labeling would not include evaluation of any efficacy claims, since EPA waived review of such claims in 1979. *See Bates*, 544 U.S. at 440 (citing 44 Fed. Reg. 27932 (1979); 40 C.F.R. § 158.640(b); Pesticide Registration Notice 96-4 (attached as Persinger Decl. Ex. N)). Accordingly, EPA never evaluated plaintiff's claim that Monsanto's advertising is false at least in part because the Roundup Concentrates "are *not effective* at killing weeds and grass or for the advertised uses when mixed to the stated strength" to obtain the gallons promised (¶ 101). *See Bates*, 544 U.S. at 440 ("This general waiver was in place at the time of Strongarm's registration; thus,

---

[2] While it is less clear whether the "easy to kill weeds" instructions appear on the same panel as the gallons statement for Super Concentrate draft labeling, that is the point. EPA cannot discern from looking at Monsanto's draft label how far apart the supposedly curative information is from the misleading gallons statement given the "[Optional section]" that appears between the claims. (*See* Dkt. No. 26-2, at pp. 4-5 of 17.) The final printed labels submitted to EPA, however, show the "Makes up to" claim either on the *same back label panel* as both the "for best results" and "easy to kill weeds" instructions (*see* RJN Fact 5 & Persinger Decl. Ex. F), or not on the label at all and instead only inside the pamphlet that is hidden from consumers prior to purchase (*see* RJN Fact 6 & Persinger Decl. Ex. G).

EPA never passed on the accuracy of the statement . . . recommending the product's use 'in all areas where peanuts are grown.'"); Persinger Ex. N, at 4 ("it would be incorrect to contend that the label approval process involves an examination of the efficacy of the pesticide").

### 3. That EPA Anticipates Deceptive Labeling Will Reach Consumers Demonstrates its Review is Not Formal and Deliberative

"If it appears to the Administrator that a pesticide or its labeling or other material required to be submitted does not comply with the provisions of [FIFRA] . . . the Administrator may issue a notice of the Administrator's intent . . . to cancel its registration . . . ." 7 U.S.C. § 136d(b). Thus, EPA expects misleading labels in the marketplace, and relies, at least in part, on post-registration marketplace surveillance to ensure that labels are not false or misleading. One example of this is the Roundup Concentrates.

A few years ago, EPA noted Monsanto's placing its website on the products' labels, telling Monsanto that "the language presented in the website becomes labeling under [FIFRA]." (RJN Fact 13.) But instead of reviewing the website, EPA said only, "should the Agency find or if it is brought to our attention that a website contains claims substantially differing from the EPA approved section 3 registration, the website will be referred to the EPA's Office of Enforcement and Compliance Assurance." (RJN Fact 14.)

EPA's reliance on post-market surveillance to determine whether labels may be false or misleading demonstrates that EPA's registration process and approval is insufficiently formal and deliberative to create federal law preempting false advertising claims.[3]

---

[3] In addition, EPA allows exemptions from registration for certain products, *see* 40 C.F.R. §§ 152.20, 152.25, 152.30, leaving manufacturers to determine whether their products qualify, including whether a product "include[s] any false or misleading labeling statements," *id.* § 152.25(f)(3)(iv). Some label and formulation changes, moreover, can be made by simply providing a "Notification" to EPA, "without requiring that the registrant obtain Agency approval," and some changes can be made without notification. *See id.* § 152.46; *see also* Persinger Decl. Ex. L (EPA Notice describing permissible changes by "notification" and "non-notification"). This process, which involves self-reporting to determine if a label will be reviewed, followed by self-regulation of exempt labels, and further self-reporting and self-regulating when a label is changed, is not "a formal, deliberative process akin to notice and

10

### D.    Plaintiff's Claims Seek to Impose Requirements Identical to FIFRA

Plaintiff's claims are also not preempted because they seek to impose requirements identical to FIFRA, which prohibits labeling that is "false or misleading in any particular." 7 U.S.C. § 136(q)(1)(A); 40 C.F.R. § 156.10(a)(5). The provision upon which Monsanto relies provides that "[a] State *may regulate* the sale or use of any federally registered pesticide or device" so long as "the regulation does not permit any sale or use prohibited by [FIFRA]," 7 U.S.C. § 136v(a) (emphasis added). States may therefore regulate pesticides as long as they do "not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." *Id.* § 136v(b). Thus, "a state-law labeling requirement is not preempted by § 1365v(b) if it is equivalent to, and fully consistent with, FIFRA's misbranding provisions." *Sheppard*, 2016 WL 3629074, at *7 (quotation omitted).

Here, plaintiff alleges Monsanto deceptively marketed its Roundup Concentrates in violation of California law, which is identical to FIFRA's prohibition against false and misleading labeling. Accordingly, plaintiff's claims are not preempted. *See id.* at *7 ("Plaintiffs' warnings-based claims [were] fully consistent with FIFRA's labeling requirements," and thus not preempted, where "Plaintiffs contend[ed] that Monsanto's existing label . . . [was] 'misbranded' because it misrepresent[ed] Roundup's safety, and [was] an inadequate warning."); *Giglio v. Monsanto Co.*, 2016 WL 1722859, at *2 (S.D. Cal. Apr. 29, 2016) ("Plaintiff's failure to warn claims do not impose a labeling or packaging requirement that is 'in addition to or different from' those required under FIFRA, and are not preempted." (emphasis in original)); *Mendoza v. Monsanto Co.*, 2016 WL 3648966, at *4 (E.D. Cal. July 8, 2016) ("Defendant has not demonstrated plaintiff's state law claims . . . will necessarily impose any additional requirements beyond FIFRA's requirement that the product not be misbranded."); *Carias*, 2016 WL 6803780, at *2.

Finally, while under FIFRA, "registration of a pesticide shall be prima facie evidence

---

comment rulemaking or an adjudicative enforcement action." *See Hofmann*, 2015 WL 5440330, at *7 (premarket label approval was "informal agency action" in part because the "process hinges on self reporting" (quotation omitted)).

that the pesticide, its labeling and packaging comply with the registration provisions of the subchapter," it also provides that "[i]n no event shall registration of [a pesticide] be construed as a defense for the commission of any offense under this subchapter," 7 U.S.C. § 136a(f)(2). "[I]n light of th[is] 'prima facie evidence/no defense' provision . . . there is no 'indication that the EPA's approval of Roundup's label ha[s] the force of law' and thus, carries preemptive force." *Carias*, WL 6803780, at *5 (quoting *Hardeman*, 2016 WL 1749680, at *2).

## II.   THE COURT SHOULD NOT EQUITABLY ABSTAIN FROM ADJUDICATING MONSANTO'S UCL LIABILITY

"A court may abstain from employing the relief permitted by the UCL if (1) 'granting the requested relief would require a trial court to assume . . . or to interfere with the functions of an administrative agency'; (2) 'the lawsuit involves determining complex economic policy, which is best handled by the Legislature or an administrative agency'; or (3) 'granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce given the availability of more effective means of redress.'" *Reudy v. Clear Channel Outdoor, Inc.*, 428 Fed. Appx. 774, 776 (9th Cir. 2011) (quotation omitted). But the doctrine applies only "in rare instances." *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1081 (N.D. Cal. 2013) (citing *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1134 (C.D. Cal. 2012)). It is appropriate only "where (1) such relief would 'interfere with' a government agency's 'administration of' its regulations to such an extent that the court 'risk[s] throwing the entire complex economic arrangement out of balance'; and (2) the 'public's need for' the relief 'is not so great as to warrant judicial interference in the administrative scheme designed to address those needs.'" *Rex*, 905 F. Supp. 2d at 1134 (citation omitted).

Rather than demonstrate how plaintiff's false advertising claims seek relief even remotely meeting the standard, Monsanto argues the Court should "equitably abstain from enjoining [the] EPA-approved product label" because EPA supposedly "determined that the Roundup Concentrates' labels were not misbranded," and "[t]he [C]ourt should not interfere with the functions of the EPA by second guessing its conclusion." (Mot. at 12 (heading capitalization and emphasis disregarded).) This is really just its preemption argument recast:

12

if the case is not *technically* preempted, the Court should reach the same result by abstaining in deference to the EPA "approval" anyway. This is simply not the interest the doctrine of equitable UCL abstention seeks to address.

The UCL abstention cases Monsanto cites—none of which involve false advertising—are instructive. In *Shamsian v. Dep't of Conservation*, 136 Cal. App. 4th 621 (2006), abstention in a case against the Department of Conservation involving beverage container redemption was proper because the case involved "an area of complex economic [or similar] policy," *id.* at 641 (citation omitted), and "issu[ing] restitution and disgorgement . . . would . . . risk throwing the entire complex economic arrangement out of balance," *id.* at 642.

In *Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292 (2007), the appellate court affirmed a lower court's discretion to abstain, because adjudicating the controversy "would require the trial court to assume general regulatory powers over the health care industry through the guise of enforcing the UCL," *id.* at 1303-304, and plaintiff still had a remedy. *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1365 (2012) (discussing *Alvarado*). Similarly, in *Reudy*, a district court did not abuse its discretion in abstaining where the injunctive relief requested "could interfere with the functions of the City's planning department," and "place an unnecessarily heavy burden on the district court to monitor and enforce the City's planning code," which includes "regulations governing outdoor advertising . . . [that] are comprehensive," and "provides a remedy for violations . . . through investigation and enforcement," 428 Fed. Appx. at 766. [4]

Unlike the cases Monsanto cites, this action involves a challenge to a single labeling

---

[4] Other cases Monsanto cites involve neither UCL claims nor equitable abstention. *Samura v. Kaiser Found. Health Plan, Inc.*, 17 Cal. App. 4th 1284, 1299 (1993) ("the Department of Corporations has exclusive power to regulate the provisions of the health service agreements" at issue, "preempting even the common law powers of the Attorney General"); *Sandoz, Inc. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 224, 230-31 (3d Cir. 1990) (case dismissed not as a matter of abstention, but because "[d]emulcents have not been classified as inactive or active by the [FDA]," and plaintiff-competitor lacked standing to enforce violations of the FDCA); *Coyle v. Hornell Brewing Co.*, 2010 WL 2539386, at *3-4 (D.N.J. June 15, 2010) (action *stayed for six months* under the doctrine of *primary jurisdiction* and *referred* to FDA).

claim. The primary issue is whether the claim is likely to mislead a reasonable consumer, a question of statutory interpretation that courts are "well-equipped to handle." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010) (denying "'abstention' defense"). Under such circumstances, courts regularly find plaintiffs "entitled to a timely determination of their rights." *Arce v. Kaiser Found. Health Plan, Inc.*, 181 Cal. App. 4th 471, 502 (2010); *see also Rex*, 905 F. Supp. 2d at 1134-35 ("It is an abuse of discretion to use the . . . doctrine to deny relief where plaintiffs' claims require the court 'to perform the basic judicial functions of contractual and statutory interpretation'" (quoting *Arce*, 181 Cal. App. 4th at 500)); *c.f. Klein*, 202 Cal. App. 4th at 1365 ("[J]udicial abstention [is] appropriate based on the presence of two factors[:] First, the plaintiffs . . . assert[] claims that would necessarily require the trial court to resolve complex policy issues[;] Second, there [is] an alternative mechanism for resolving the issues plaintiffs . . . raise[] in their complaints.").

Finally, plaintiff's allegations of Monsanto's misconduct further mitigate against applying the equitable doctrine of abstention in Monsanto's favor. *See Rex*, 905 F. Supp. 2d at 1135 (court "nonplussed that a multi-billion-dollar corporation would invoke an *equitable* doctrine . . . to avoid liability for allegedly imposing illegal contracts on" borrowers).

## III.   PLAINTIFF STATES CONSUMER FRAUD CLAIMS

The UCL, FAL, and CLRA "prohibit 'not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). This objective "reasonable consumer" test requires only that a plaintiff "show that 'members of the public are likely to be deceived.'" *Id.* (quotation omitted). In determining likelihood of deception, challenged representations must be considered not only on their own, but also in the "context of the packaging as a whole." *In re Ferrero Litig.*, 794 F. Supp. 2d at 1116.

At the pleading stage, the focus is on whether a plaintiff alleging deceptive advertising might *possibly* show a reasonable consumer is likely to be deceived. *See Williams*, 552 F.3d at 939 (even just "potential deception" defeats a motion to dismiss). "Whether a practice is

14

deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on [a motion to dismiss]." *Id.* (internal quotations and citation omitted). Dismissal should only be granted in the "rare situation" where an advertisement itself "ma[kes] it impossible for the plaintiff to prove that a reasonable consumer [could be] deceived," *id.* Thus, "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) (quoting *Williams*, 552 F.3d at 938).

Plaintiff alleges Monsanto's gallons statement is misleading because, by juxtaposing certain advertised uses with the statements "KILLS THE ROOTS GUARANTEED" and "Makes Up to [ ] Gallons," Monsanto deceptively suggests that a bottle makes that number of gallons of spray solution for those advertised uses. However, only buried in a pamphlet that consumers would not see prior to purchase does Monsanto explain that in order to obtain the promised number of gallons, the consumer would need to use the entire bottle on "easy to kill weeds such as seedlings"—whatever those are. (*See generally* ¶¶ 13-32.)

These allegations easily state consumer fraud claims, which "may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006) (quotation omitted). "Additionally, failure to disclose other relevant information where '[a] perfectly true statement [has been] couched in such a manner that it is likely to mislead or deceive the consumer' is actionable under the UCL." *Khoday v. Symantec Corp.*, 2014 WL 1281600, at *22 (D. Minn. Mar. 13, 2014) (quotation omitted).

Monsanto nevertheless argues that plaintiff's consumer fraud claims are implausible because the Roundup Concentrates say they make "up to" a certain number of gallons. (*See* Mot. at 18-19.) However, "to the extent that the 'up to' disclaimer is in fine print, Defendants have no defense against this claim," *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) (citing *Williams*, 552 F.3d at 939). Here, the "Makes up to" portion of the gallons statement appears far less prominently than the "__ Gallons" portion. (*See* FAC

15

at 1, 4.) But even setting that aside, "multiple courts have found that 'up to' representations may materially mislead consumers." *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1172-73 (E.D. Cal. 2013) (collecting cases).

Plaintiff alleges that reasonable consumers would interpret Monsanto's gallons statement to mean the Roundup Concentrates provide the amount promised under normal conditions for use, *i.e.*, those advertised on the label, rather than obscured inside a pamphlet (¶¶ 29-30). And plaintiff also alleges that reasonable consumers purchasing the product based on its label would follow the dilution instructions prominently set forth on the label, and under the "best results" portion of the directions for use, and likely not even know what an "easy to kill weed" "seedling" is. (¶ 28.) Plaintiff thus alleges facts showing this is not the "rare" case that can be dismissed on the face of the label simply because Monsanto says "up to."

The cases on which Monsanto relies are unavailing. (*See* Mot. at 18-19 & n.12.) Two involved Internet connection speeds and are readily distinguishable, while a third supports the plausibility of plaintiff's claims. In *Maloney v. Verizon Internet Servs., Inc.*, 413 Fed. Appx. 997 (9th Cir. 2011), the Ninth Circuit affirmed the dismissal of a UCL action against Verizon after it sold Internet service "stat[ing] that a subscriber would receive . . . a speed 'up to 3 Mbps.'" *Id.* at 999. However, the contract explained in detail that "[t]he speed of the Service will vary based on network or Internet congestion, your computer configuration, the condition of your telephone line and the wiring inside your location, among other factors." *Id.* Here, by contrast, Monsanto hid from consumers additional information—itself confusing—that elucidated the supposed meaning of its gallons statement. *Compare Reid*, 780 F.3d at 956 ("a consumer would not see unless he or she opened the package (presumably after purchasing it)," information set forth in the "interior packaging").

In *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279 (S.D.N.Y. 2011), plaintiffs' alleged they did not receive "up to 3 times the speed on most standard DSL packages and up to 100x faster than dial up" as promised because "when using [certain] programs . . . [they] routinely experienced low Internet speeds," *id.* at 283. The court found these allegations "insufficient to establish that Plaintiffs' *overall* Internet connections did not provide the promised speeds,"

16

and instead alleged "merely that their Internet connections while using a limited subset of applications were slower than promised." *Id.* Although the *Fink* court "[f]urther[]" held that "qualifi[cation] by the phrase 'up to[]' . . . would lead a reasonable consumer to expect that speeds could be less than [ ] advertised," *id.* at 283-84, the Roundup Concentrates are fundamentally different than Internet service. While consumers understand that Internet connection speeds vary depending on any number of complex factors (like those identified in *Maloney*), and are constantly in flux, even from second to second, the amount of spray solution a bottle of Roundup Concentrate makes is fixed. While Monsanto provides the "alternative" dilution instruction buried inside the pamphlet, the label does not convey that information to the consumer at the time of purchase, so a purchaser would reasonably assume there is just one way to use the product—by following Monsanto's instructions—and that this is what would provide the amount of gallons Monsanto promises. (*See* ¶¶ 28-29, 31.)

Finally, in *Frenzel v. AliphCom*, 2015 WL 4110811 (N.D. Cal. July 7, 2015), the court found plaintiff *had* plausibly alleged defendant's statement that a product provided "Battery life up to 10 days" was deceptive, since "the phrase 'up to' does not necessarily preclude [a] statement from providing the basis for a misrepresentation claim under California's consumer protection statutes." *Id.*, at *10-11 (quotation omitted).

## IV.   PLAINTIFF STATES STATE & FEDERAL WARRANTY CLAIMS

### A.   Plaintiff States a Breach of Express Warranty Claim

"Express warranties by the seller are created" by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," which "creates an express warranty that the goods shall conform to the affirmation or promise." Cal. Com. Code § 2313(1)(a). Similarly, "[a]ny description of goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id.* § 2313(1)(b). Thus, the elements of a claim for breach of warranty are: "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015)

17

(quotation and citation omitted). Plaintiff pleads these elements (¶¶ 100-101), and their factual bases (*see*, *e.g.*, ¶¶ 2-3, 13, 19, 36, 38).

Nevertheless, citing EPA's approval—which is entitled to no deference—and the supposed "truthfulness" of its gallons statement if considered in the context of information it obscures from consumers, Monsanto argues that plaintiff fails to state a breach of warranty claim because "there is no misrepresentation on the label" (*see* Mot. at 19-20). However, "[c]ourts liberally construe sellers' affirmations of quality in favor of injured consumers," *Allen v. Hylands, Inc.*, 2012 WL 1656750, at *3 (C.D. Cal. May 2, 2012), and such "fact-based" arguments are "not appropriate on a motion to dismiss," *Thesier-Hendricks v. TJL Enters., Inc.*, 2015 WL 10791893, at *7 (C.D. Cal. Aug. 3, 2015). Here, plaintiff plausibly states misrepresentation claims, so her warranty claims survive too. *See*, *e.g.*, *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014) ("The motion to dismiss the breach of express warranty claim is DENIED for the same reasons as the consumer protection and misrepresentation-based claims addressed above.").

### B.      Plaintiff States a Breach of Implied Warranty Claim

"The California Supreme Court has explained that '[m]erchantability has several meanings, two of which are relevant to the instant case: the product must "[conform] to the promises or affirmations of fact made on the container or label," and must be "fit for the ordinary purposes for which such goods are used."'" *In re Ferrero Litig.*, 794 F. Supp. 2d at 1118 (quoting *Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975) (citing Cal. Com. Code §§ 2314(2)(c), (f))). Plaintiff alleges Monsanto breached the implied warranty of merchantability because the Roundup Concentrates "did not conform to the promises and affirmations made on the container or label of the goods," as required by § 2314(2)(f). (*See* ¶ 111.) Curiously, despite acknowledging that plaintiff brings her claim under § 2314(2)(f) (Mot. at 21), Monsanto quotes *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), to argue that it did not breach this warranty because plaintiff "does not allege that the Roundup Concentrates did not perform at a 'minimum level of quality.'" (*Id.* at 22.) *Birdsong*, however, addressed § 2314(2)(c), not (f). *See* 590 F.3d at 958. Because plaintiff here "bring[s her] claim under a

18

different definition of merchantability," the Court should "decline[] to dismiss Plaintiff['s] claim for breach of the implied warranty of merchantability." *See In re Ferrero Litig.*, 794 F. Supp. 2d at 1118; *Jones v. Nutiva, Inc.*, 2016 WL 5210935, at \*9 (N.D. Cal. Sept. 22, 2016).

### C.   Plaintiff States a Magnuson-Moss Warranty Act Claim

Pursuant to the MMWA, "a consumer who is damaged by the failure of a supplier, warrantor or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring a suit for damages and other legal and equitable relief," 15 U.S.C. § 2310(d)(1). The "obligations" under the MMWA apply only to "full" warranties, those that meet the criteria set forth in § 2304. *See In re Apple iPhone 3G Prods. Liab. Litig.*, 859 F. Supp. 2d 1084, 1089-90 (N.D. Cal. 2012) (citation omitted). For other warranties, "the MMWA allows consumers to 'enforce written and implied warranties in federal court' by 'borrowing state law causes of action.'" *Id.* at 1090 (quoting *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004)).

Thus, "[w]here a plaintiff only alleges a violation of the MMWA insofar as a defendant 'may have breached warranties under state law,' without an allegation that the defendant 'otherwise failed to comply with [the MMWA],' it follows that 'the federal claims hinge on the state law warranty claims.'" *Id.* (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008) (citing *Schimmer*, 384 F.3d at 405)). Accordingly, when state-law warranty claims survive dismissal, so too should related MMWA claims. *See Acedo v. DMAX, Ltd.*, 2015 WL 12696176, at \*27 (C.D. Cal. Nov. 13, 2015) (denying motion to dismiss MMWA claim because plaintiff "adequately stated an implied warranty claim").

To be actionable under the MMWA, an express warranty must be a "written warranty," which is either "(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified level of time," or "(B) any undertaking in writing . . . to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the

19

*Martin v. Monsanto Company*, Case No. 5:16-cv-02168-JFW (SPx)
OPPOSITION TO MOTION TO DISMISS

undertaking . . . ."[5] 15 U.S.C. § 2301(6). An "implied warranty" actionable under the MMWA is any "implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." *Id.* § 2301(7). Here, plaintiff invokes § 2310(d)(1) (¶ 62), and brings state law claims for breach of express and implied warranty (¶¶ 99-111).[6]

Monsanto argues plaintiff fails to state an MMWA claim because its gallons statement is not a "written warranty," since it does not "guarantee a level of performance *over a specified time period*." (Mot. at 14-15 (emphasis added).) Citing a footnote in a decades-old Seventh Circuit case, Monsanto contends any such statement must be "explicit" (*id.* at 15 (citing *Skelton v. Gen. Motors Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981)). But footnote 7 of *Skelton* is mere dicta. *See* 660 F.2d at 316 n.7 ("plaintiffs do not challenge the district court's conclusion that the warranties described in their complaint are not within the s[ection] 101(6) definition").

Here, Monsanto promises a specific result in terms of gallons made. "[S]tatements promising a product can effectively achieve a specific result have been considered written warranties under the MMWA," *Perez v. Monster Inc.*, 149 F. Supp. 3d 1176, 1183 (N.D. Cal. 2016) (quoting *Ruszecki v. Nelson Bach USA Ltd.*, 2015 WL 6750980, at *4 (S.D. Cal. June 25, 2015)) (citation omitted). Courts do not require an express time statement where, like here, a temporal element is implicit in the performance warranty itself (*see* ¶ 63). *See*

---

[5] The Roundup Concentrates include the following warranty actionable under this section: "CONSUMER GUARANTEE / If for any reason you are not satisfied after using this product, simply send us original proof of purchase and we will replace the product or refund the purchase price." (*See* Persinger Decl. Ex. M.) The FAC does not reference this warranty, instead relying on § 2301(6)(A), but could be amended to add a claim under § 2301(6)(B).

[6] Plaintiff's MMWA claim focuses on Monsanto's breach of express warranty. If paragraph 62 of the FAC is insufficient to state an MMWA claim based on Monsanto's breach of implied warranty as alleged in the Fifth Cause of Action (¶¶ 105-111), plaintiff respectfully requests leave to amend. *See In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1101-102 (C.D. Cal. 2012) (granting leave to amend MMWA claim where plaintiffs did not allege implied warranties violated the act, but court could not conclude such a claim would be futile, "given plaintiffs' allegations concerning implied warranties elsewhere in the complaint").

20

1  *Ruszecki*, 2015 WL 6750980, at *4 (defendant's "product labels are more than mere product

2  descriptions . . . because they guarantee the products are effective remedies for stress and

3  anxiety," and thus "'guarantee a specified level of performance' by promising consumers the

4  products will accomplish what they purport to do"); *Cortina v. Wal-Mart, Inc.*, 2015 WL

5  260913, at *5 (S.D. Cal. Jan. 20, 2015) (claims that dietary supplement offered "high

6  absorption" and "3X Better Absorption" were actionable warranties under MMWA, since the

7  claims "set verifiable and reasonable benchmarks" for performance (record citation omitted)).

8  **V.    PLAINTIFF MAY ASSERT CLAIMS ON BEHALF OF ROUNDUP**

9  **CONCENTRATE PLUS PURCHASERS BECAUSE THE PRODUCTS, LEGAL**

10  **CLAIMS, & INJURIES SUFFERED ARE SUBSTANTIALLY SIMILAR**

11       Monsanto contends that because plaintiff purchased only Super Concentrate, she "does

12  not have standing to bring claims based on Roundup Concentrate Plus." (Mot. at 22.)

13  Monsanto's "legal argument is flawed" because "the issue of whether a class representative

14  'may be allowed to present claims on behalf of others who have similar, but not identical,

15  interests depends not on standing, but on an assessment of typicality and adequacy of

16  representation.'" *Bruno*, 280 F.R.D. at 530 (quoting *Greenwood v. CompuCredit Corp.*, 2010

17  WL 4807095, at *3 (N.D. Cal. Nov. 19, 2010)). This is because "when class representatives

18  establish standing under Article III, the requirements of Rule 23(a) are ordinarily the best

19  means of 'effectively limit[ing] the class claims to those fairly encompassed by the named

20  plaintiff's claims.'" *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1007 (N.D. Cal.

21  2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)); *see also Brazil v.*

22  *Dole Food Co., Inc.*, 2013 WL 5312418, at *7 (N.D. Cal. Sep. 23, 2013) (Explaining that

23  plaintiff was "not asserting standing to sue over injuries he did not suffer; rather, [plaintiff]

24  asserts that the injuries he suffered as a result of buying the Purchased Products and the

25  injuries suffered by the unnamed class members who purchased the Substantially Similar

26  Products are one and the same."); *c.f. Chester v. TJX Cos., Inc.*, 2016 WL 4414768, at *7

27  (C.D. Cal. Aug. 18, 2016) (denying motion to strike allegations concerning items class

28  representatives did not purchase because "standing is to be a jurisdictional benchmark and

21

not a bludgeon with which to bat litigants out of the courthouse").

Accordingly, courts frequently reserve this analysis for class certification. *See*, *e.g.*, *Dorsey v. Rockhard Labs., LLC*, 2014 WL 4678969, at *3-4 (C.D. Cal. Sept. 19, 2014) ("The Court will revisit this issue at the class certification stage in determining whether a class can be certified and, if so, the contours of that class," but "it appears that Plaintiff's claims are sufficiently similar to those of the putative class members who purchased a different iteration . . . to potentially allow him to represent them in this class action."); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012) ("we agree with the numerous recent decisions that have concluded that Defendants' argument is better taken under the lens of typicality or adequacy of representation"); *c.f. Jones*, 2016 WL 5210935, at *4 ("If the products are substantially similar, 'any concerns regarding material differences in the products can be addressed at the class certification stage.'" (quotation omitted)).

But some courts have addressed the issue at the pleading stage. "In the Ninth Circuit, there is 'no controlling authority' on whether a plaintiff in a class action has standing to assert claims based on products he did not purchase." *Hunter v. Nature's Way Prods., LLC*, 2016 WL 4262188, at *14 (S.D. Cal. Aug. 12, 2016) (quotation omitted). However, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (citations omitted). "[B]y limiting a plaintiff's ability to sue over products he did not purchase to situations involving claims and products that are substantially similar to those products he did purchase, courts ensure that the plaintiff is seeking to represent only those individuals who have suffered essentially the same injury as the plaintiff." *Brazil*, 2013 WL 5312418, at *7.

Courts find "substantial similarity where (1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer is the same; and (3) both the products and the legal claims and injury are similar." *Jones*, 2016 WL 5210935, at *4 (citation omitted). This case satisfies all three factors.

22

The products are physically similar both in terms of their packaging and contents. Both come in similar size and shape bottles, with similar designs differing primarily in their use of color—red for Concentrate Plus, and purple for Super Concentrate. (*See* FAC at 1, 4, 6-7.) Both are concentrated solutions, containing 18% and 50.2% glyphosate, respectively. (*See* Compl., Dkt. No. 1 ¶¶ 37, 39.) And regardless of the products' differing concentrations or packaging color, Monsanto injured purchasers of both products through the same behavior: overstating the amount of solution the product would make, and thus the value its purchase represented, and attempting to justify that overstatement by obscuring "curative" information where consumers would not see it. Any minor differences between the products are immaterial to those injuries and plaintiffs' claims. *See* *Brazil*, 2013 WL 5312418, at *7 ("plaintiff claims that he was misled by the improper use of the term 'all natural' on Dole Mixed Fruit in Cherry Gel," and "the injury he suffers as a result of that misrepresentation is not meaningfully distinguishable from the injury suffered by an individual who is misled by the use of the term 'all natural' on Dole Mixed Fruit in Black Cherry or Peach"); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (plaintiffs had standing where they "challenging the same kind of food products (*i.e.*, ice cream) as well as the same labels for all the products—*i.e.*, 'All Natural'").[7]

## VI.   PLAINTIFF HAS STANDING TO PURSUE INJUNCTIVE RELIEF

Monsanto argues plaintiff lacks standing to seek injunctive relief because she now "knows what the label means, so '[t]here is no danger that [she] will be misled in the future.'" (Mot. at 14 (quoting *Strumlauf v. Starbucks Corp.*, 2016 WL 3361842, at *3 (N.D. Cal. June

---

[7] Monsanto's cases are distinguishable. *Dysthe v. Basic Research LLC*, 2011 WL 5868307, at *4-5 (C.D. Cal. June 13, 2011) (finding "significant differences between the [p]roducts," including their label claims); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *1, *3 (N.D. Cal. Jan. 10, 2011) (purchaser of Drumstick ice cream products trying to represent purchasers of Dibs ice cream products, with no discussion comparing products); *Johns v. Bayer Corp.*, 2010 WL 476688, at *1, *4-5 (S.D. Cal. Feb. 9, 2010) (purchaser of One A Day Men's Health Formula vitamins trying to represent purchasers of One A Day Men's 50+ Advantage vitamins, with no discussion comparing products).

1  17, 2016)).) However:

2      [A] plaintiff does not lack standing simply because "he has learned that a label

3      is misleading and therefore will not be fooled by it again." Rather, a plaintiff

4      lacks standing if he has not "express[ed] an intent to purchase the products in

5      the future."

6  *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 575 (C.D. Cal. 2014) (quoting *Jones v. ConAgra*

7  *Foods, Inc.*, 2014 WL 2702726, at *12 (N.D. Cal. June 13, 2014)).

8      Here, plaintiff alleges that, if she "could be assured that statements regarding the

9  amount of Roundup yielded when mixing according to the instructions for the advertised uses

10  was accurate, and that the price of the products reflected a market value consistent with the

11  amount of product actually provided, *she would purchase the product or other similar*

12  *Roundup concentrate products in the future*." (¶ 47 (emphasis added).) Such allegations give

13  plaintiff standing to seek injunctive relief. *See*, *e.g.*, *Shimono v. Harbor Freight Tools USA,*

14  *Inc.*, 2016 WL 6238483, at *7 (C.D. Cal. Oct. 24, 2016) (standing where plaintiff "would

15  consider buying . . . products again if the sales prices were not marketed in a deceptive

16  manner"); *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 533-34 (N.D. Cal. 2012)

17  (standing where plaintiffs "stated [an] intent to purchase" the challenged product in the future

18  since, "[s]hould plaintiffs encounter the denomination 'All Natural' on an Arizona beverage

19  at the grocery store today, they could not rely on that representation with any confidence,"

20  which "is the harm California's consumer protection statutes are designed to redress.").

21      As the court explained in *Lilly v. Jamba Juice Co.*, 2015 WL 1248027 (N.D. Cal. Mar.

22  18, 2015):

23      When a consumer discovers that a representation about a product is false, she

24      doesn't know that another, later representation by the same manufacturer is

25      also false. She just doesn't know whether or not it's true. A material

26      representation injures the consumer not only when it is untrue, but also when

27      it is *unclear* whether or not is true.

28  *Id.*, at *3. Absent injunctive relief, if confronted in the future with a Roundup Concentrates'

24

1   claim as to gallons made, plaintiff will not know whether the representation is true or false.

2   Moreover, even aware that the gallons statement is misleading, if she wants to buy the

3   Roundup Concentrates, absent injunctive relief, plaintiff will still have to pay the premium

4   price the products command due to their misleading labeling. (¶¶ 40, 42-43.)[8]

5       Moreover "[w]hile a consumer must have been injured to have standing to bring a

6   claim under a consumer protection statute in the first instance, a lead plaintiff need not allege

7   that he will willingly subject himself to future misconduct, or that he will be fooled by false

8   advertising he now knows to be false, in order to seek injunctive relief *on behalf of a class*."

9   *Kabbash*, 2015 WL 6690236, at *7 (emphasis added). Because absent class members are

10  unaware of the fraud, "there is a likelihood of repeat injury for the class as a whole, and on

11  the basis of 'class standing,' the claims may proceed." *Id.* (citation omitted); *see also Harris*

12  *v. Las Vegas Sands LLC*, 2013 WL 5291142, at *4 (C.D. Cal. Aug. 16, 2013) (same); *compare*

13  *Circle Click Media LLC v. Regus Mgmt. Group LLC*, 2016 WL 3879028, at *6 (N.D. Cal.

14  July 18, 2016) (suggesting a determination of Article III standing can await class certification

15  since, "[i]n order to obtain injunctive relief on behalf of others under the UCL, generally a

16  plaintiff must comply with class certification requirements").

17                          **CONCLUSION**

18      The Court should deny Monsanto's motion. But if the Court is inclined to grant the

19  motion in any respect, plaintiff respectfully requests it be without prejudice and with leave to

20  amend.

21

22  _____

    [8] Even absent allegations of future intent to purchase, courts construe Article III to facilitate

23  the important enforcement provisions of California's consumer protection statutes. *See*

    *Chester*, 2016 WL 4414768, at *8 (refusing to find that courts must ignore Article III to issue

24  injunctive relief); *Kabbash v. Jewelry Channel, Inc. USA*, 2015 WL 6690236, at *6 (C.D.

25  Cal. Nov. 2, 2015) (though unlikely plaintiffs would continue to purchase defendant's

    products, "to construe that as a lack of redressability here would render California consumer

26  protection laws ineffectual"); *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *7-8 (C.D.

27  Cal. Apr. 22, 2011) (a narrow view of Article III would "thwart the objective of California's

    consumer protection laws," because "a plaintiff who has been injured would always be

28  deemed to avoid the cause of injury thereafter . . . and would never have Article III standing").

Dated: December 30, 2016        Respectfully Submitted,

/s/ Jack Fitzgerald

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**JACKSON & FOSTER, LLC**
SIDNEY W. JACKSON, III
75 St. Michael Street
Mobile, Alabama 36602
Phone: (251) 433-6699
Fax: (251) 433-6127

***Attorneys for Plaintiff and the Putative Class***

*Martin v. Monsanto Company*, Case No. 5:16-cv-02168-JFW (SPx)
OPPOSITION TO MOTION TO DISMISS