**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**JACKSON & FOSTER, LLC**
SIDNEY W. JACKSON, III (admitted *pro hac vice*)
75 St. Michael Street
Mobile, Alabama 36602
Phone: (251) 433-6699
Fax: (251) 433-6127

***Counsel for Plaintiff and the Proposed Class***

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ELISABETH MARTIN, on behalf of herself, all others similarly situated, and the general public,<br><br>        Plaintiff,<br><br>    v.<br><br>MONSANTO COMPANY,<br><br>        Defendant. | Case No: 5:16-cv-2168-JFW-SP<br><br>CLASS ACTION<br><br>**THIRD AMENDED COMPLAINT FOR VIOLATIONS OF:**<br><br>**15 U.S.C. §§ 2301, *ET SEQ.*;**<br><br>**CAL. CIV. CODE §§ 1750 *ET SEQ.*;**<br><br>**CAL. BUS. & PROF. CODE §§17500 *ET SEQ.*;**<br><br>**CAL. BUS. & PROF. CODE §§17200 *ET SEQ.*; AND**<br><br>**FOR BREACH OF EXPRESS & IMPLIED WARRANTIES.**<br><br>DEMAND FOR JURY TRIAL |

1    With Monsanto's written consent pursuant to Fed. R. Civ. P. 15(a)(2), plaintiff
2  Elisabeth Martin, on behalf of herself, all others similarly situated, and the general public, by
3  and through her undersigned counsel, brings this action against Monsanto Company and
4  alleges the following upon her own personal knowledge or, where she lacks personal
5  knowledge, upon information and belief, including the investigation of her counsel.

6                                    **SUMMARY OF CASE**

7    1.    Monsanto is the manufacturer of the ubiquitous herbicide known as Roundup.
8  Among other Roundup products, Monsanto manufactures, markets, and sells Roundup Weed
9  & Grass Killer Concentrate Plus ("Roundup Concentrate Plus") and Roundup Weed & Grass
10  Killer Super Concentrate ("Roundup Super Concentrate," together with Roundup
11  Concentrate Plus, the "Roundup Concentrates"). Unlike "Ready-to-Use" Roundup, the
12  Roundup Concentrates are intended to be diluted with water prior to use.

13    2.    During at least the preceding four years, Monsanto advertised the Roundup
14  Concentrates as capable of making a certain number of gallons, and as effective at addressing
15  specific applications. For example, prominently at the top of the container in bold white
16  numbers on a red background, the 32 oz. size Roundup Concentrate Plus advertises it makes
17  10 gallons of Roundup, the 36.8 oz. size advertises it makes 12 gallons of Roundup, and the
18  64 oz. size advertises it makes 21 gallons of Roundup, as pictured below.



*Martin v. Monsanto Company*, Case No. 16-cv-2168-JFW-SP
THIRD AMENDED CLASS ACTION COMPLAINT

3.     These advertisements were false, however, because the Roundup Concentrates were in fact only capable of making *half* the number of gallons represented when diluted to the strength required for the uses advertised on the label of each product, such as around flower beds and trees, on driveways and walkways, and along fences. Thus, for example the 32 oz. size Roundup Concentrate Plus makes only 5 ⅓ gallons of Roundup for the advertised uses (despite advertising 10 gallons), the 36.8 oz. size makes only 6 ⅛ gallons of Roundup (despite advertising 12 gallons), and the 64 oz. size makes only 10 ⅔ gallons of Roundup (despite advertising 21 gallons). The same holds true for all sizes and variations of the Roundup Concentrates—each makes only between approximately 50% (for Roundup Concentrate plus) or 60% (for Roundup Super Concentrate) of the amount promised

4.     Plaintiff brings this action to enjoin Monsanto from continuing to falsely advertise the Roundup Concentrates in this manner, and to recover restitution and damages for herself and other purchasers.

## JURISDICTION & VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a state different from Monsanto. In addition, more than two-thirds of the members of the class reside in states other than the state in which Monsanto is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply. In addition, the Court has federal question jurisdiction under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. The Court also has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.     The Court has personal jurisdiction over Monsanto pursuant to Cal. Code Civ. P. § 410.10, as a result of Monsanto's substantial, continuous and systematic contacts with the state and because Monsanto has purposely availed itself of the benefits and privileges of conducting business activities within the state.

1    7.    Venue is proper in this Central District of California pursuant to 28 U.S.C. §
2    1391(b) and (c), because Monsanto resides (*i.e.*, is subject to personal jurisdiction) in this
3    district, and a substantial part of the events or omissions giving rise to the claims occurred in
4    this district.

5                                          **PARTIES**

6    8.    Plaintiff Elisabeth Martin is a resident of Highland, California.

7    9.    Defendant Monsanto Company is a Delaware corporation with its principal
8    place of business in St. Louis, Missouri.

9                                          **FACTS**

10    10.    Monsanto is one of the world's largest agricultural companies, and has long been
11    manufacturing and selling herbicides to control weeds. Monsanto's leading herbicide is called
12    Roundup, whose active ingredient is called glyphosate. Monsanto first introduced Roundup
13    in the mid-1970s for the agricultural community, and then in the mid-1980s for residential
14    use. Roundup has been a dramatically successful product, and is one of the most widely-used
15    herbicides in the world for residential use.

16    11.    Monsanto manufactures, markets, and sells Roundup in various formulations,
17    including Roundup Ready-to-Use formulations, which are intended simply to be sprayed
18    directly out of the bottle in which the product is purchased; and concentrated versions of the
19    Roundup, such as the Roundup Concentrates, which the purchaser must first dilute with water
20    before using with a tank sprayer.

21    12.    Specifically, Monsanto manufactures, markets and sells Roundup Concentrate
22    Plus in 18- 32-, 36.8- and 64-ounce bottles (as pictured in the introduction above, and below
23    with respect to the Roundup Concentrate Plus 18 oz. "Singles" 6 pack), and Roundup Super
24    Concentrate in 35.2-, 64-, and 128-ounce bottles, as pictured below.

25    ///
26    ///
27    ///
28    ///

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







13.     The principal display panel of each of the Roundup Concentrates prominently

claims that that product "Makes Up to" a stated number of gallons, as follows.

4

*Martin v. Monsanto Company*, Case No. 16-cv-2168-JFW-SP
THIRD AMENDED CLASS ACTION COMPLAINT

| Roundup Concentrate Plus Singles – 18 Fl. Oz. | "Makes Up to **6 Gallons**" |
| Roundup Concentrate Plus – 32 Fl. Oz. (1 Qt.) | "Makes Up to **10 Gallons**" |
| Roundup Concentrate Plus – 36.8 Fl. Oz. | "Makes Up to **12 Gallons**" |
| Roundup Concentrate Plus – 64 Fl. Oz. (1/2 Gallon) | "Makes Up to **21 Gallons**" |
| Roundup Super Concentrate – 35.2 Fl. Oz. | "Makes Up to **23 Gallons**" |
| Roundup Super Concentrate – 64 Fl. Oz. (1/2 Gallon) | "Makes Up to **42 Gallons**" |
| Roundup Super Concentrate – 128 Fl. Oz. (1 Gallon) | "Makes Up to **85 Gallons**" |

14.    Directly under the Roundup name, each Roundup Concentrate label states "WEED & GRASS KILLER." Further, directly under the Roundup name and within a prominent geometric design with an eye-catching illustration, each Roundup Concentrate label also states claims the product "**KILLS** THE ROOTS GUARANTEED." A close-up of a Roundup Super Concentrate label illustrating these elements is depicted below.



15.    Given the price of the Roundup Concentrates in comparison to Ready-to-Use Roundup, together with the purported number of gallons each Roundup Concentrate makes, Monsanto markets the Roundup Concentrates as better values than its Ready-to-Use products.

16.    A glossy several-page pamphlet is taped over the back label of each Roundup Concentrate bottle, with its front page showing a graphic providing information under three headings, "Where to Use," "What to Know," and "How to Use." The back of the bottle of the Roundup Super Concentrate and Roundup Concentrate Plus, respectively, with the taped pamphlet, is depicted below.

5



17.    Close-up exemplars of this graphic for Roundup Concentrate Plus, and Roundup Super Concentrate, respectively, are depicted below.

## **Roundup Concentrate Plus**



6

**<u>Roundup Super Concentrate</u>**



18.    As depicted above, the specific statements within each section of the graphic are as follows:

<u>How to Use</u>

- "Add 6 fl oz Per Gallon of Water" [Roundup Concentrate Plus]
- "Add 2 1/2 fl oz Per Gallon of Water" [Roundup Super Concentrate]
- "Use a Tank Sprayer"

<u>Where to Use</u>

- "Along Fences"
- "Driveways & Walkways"
- "Around Trees"
- "Around Flower Beds"

<u>What to Know</u>

- "Rainproof in 30 Minutes"
- "Visible Results in 12 Hours" [Roundup Concentrate Plus]
- "Visible Results in 2 to 4 Days" [Roundup Super Concentrate]
- "Plant 1 to 3 Days After Application (See booklet for details)"

7

19.     Given the dilutions set forth on the back panel of each Roundup Concentrate, the specified number of gallons that Monsanto represents the Roundup Concentrates are capable of making for the advertised uses is *double* what they are actually capable of making when mixed with water according to Monsanto's own instructions. Thus, the Roundup Concentrates actually make about *half* the amount Monsanto claims, as demonstrated in the table below.

| Product | "Makes Up to" Gallon Promise | Back Label Instruction (Amount to Mix with 1 Gallon Water) | Amount Made Following Instructions |
|---|---|---|---|
| Concentrate Plus (18 oz.) | 6 gallons | 6 fl. oz. | 3 gallons |
| Concentrate Plus (32 oz.) | 10 gallons | 6 fl. oz | 5.33 gallons |
| Concentrate Plus (36.8 oz.) | 12 gallons | 6 fl. oz | 6.13 gallons |
| Concentrate Plus (64 oz.) | 21 gallons | 6 fl. oz | 10.67 gallons |
| Super Concentrate (35.2 oz.) | 23 gallons | 2.5 fl. oz | 14.08 gallons |
| Super Concentrate (64 oz.) | 42 gallons | 2.5 fl. oz | 25.6 gallons |
| Super Concentrate (128 oz.) | 85 gallons | 2.5 fl. oz | 51.2 gallons |

20.     Sealed underneath the back-panel label page is the remainder of the pamphlet that also includes instructions for use.

21.     But the pamphlet as taped to the back label of the bottles is sealed tightly and only with careful effort is the pamphlet able to be removed and opened without being torn.

22.     As a result, most reasonable consumers would not feel permitted to unseal the pamphlet prior to purchase. Thus, the vast majority of purchasers do not rely on any of the information contained within the pamphlet, and would not even see that information, *prior* to purchase.

23.     Even for those who have already purchased the product and then succeeded in removing the pamphlet, generally they do not feel the need to review the instructions on

1      several pages of fine print before actual use, particularly since they have already seen the

2      easy-to-read diagram with mixing instructions on the cover of the pamphlet prior to purchase.

3           24.    And even for those who do read the remainder of the pamphlet after purchase, it

4      is only through a careful review of this pamphlet, including noticing a buried "fine print"

5      instruction, that the customer may see the inconsistent statement from Monsanto that accounts

6      for the prominent misrepresentation that overstates the number of gallons made.

7           25.    As an example, two internal pages of the several-page pamphlet for the 1/2 gallon

8      Super Concentrate are depicted below:



26           26.    Notably, the pamphlet falsely restates, as the very first item under the heading,

27      "PRODUCT FACTS - KILLS ALL TYPES OF WEEDS & GRASSES," that the product

28

9

"Makes up to 42 Gallons." The pamphlet further falsely states, as the first bullet under "Mixing Instructions," that, "For best results, add 2-1/2 fl oz (5 Tbs) to 1 gallon of water."

27.     Only when a purchaser reads further down into "Mixing Instructions" is the very first and only reference to the possibility of using a greater dilution, wherein it states "For easy to kill weeds such as seedlings, add 1-1/2 fl oz (3 Tbs) to 1 gallon of water."

28.     A reasonable purchaser – for example, an ordinary homeowner interested in removing weeds along a fence, on a driveway, or around trees or flower beds – does not have the professional understanding of what constitutes an "easy to kill weed," and does not have the technical expertise to discern when it would be appropriate to use less concentrate per this instruction. To the contrary, a reasonable consumer would instead rely on Monsanto's representation that "for best results, add 2-1/2 fl oz (5 Tbs) to 1 gallon of water," especially inasmuch as this is consistent with the prominent graphic on the product's rear panel (which is also the cover to the pamphlet), set forth adjacent to the product's advertised intended uses.

29.     Reasonable consumers read and understand "up to" representations – like the "Makes Up to" a specific number of "Gallons" representations on the Roundup Concentrates – as providing, under normal and reasonable conditions for use, the maximum results promised. Indeed, the U.S. Federal Trade Commission  has explicitly determined this to be the case, stating that its "view" is "that advertisers using these claims should be able to substantiate that consumers are likely to achieve the maximum results promised under normal circumstances."

30.     As demonstrated by the pamphlet itself, including its cover, use of the product only on "weeds such as seedlings" is not normal use. Rather, normal use is as represented on the pamphlet's cover, and of course on the front of the bottle: as a "WEED AND GRASS KILLER," that "KILLS ALL TYPES OF WEEDS & GRASSES," and is to be used "Along Fences," on "Driveways & Walkways," "Around Trees," and "Around Flower Beds," wherein the use is "GUARANTEED" to "KILL[] THE ROOTS."

31.     Reasonable consumers should not be expected to notice, and then engage in the math necessary to determine that, following the dilution instructions provided on the back of

the label of each Roundup Concentrate, the product only makes half the amount stated prominently on the front.

32.     Moreover, even for the rare consumer that might engage in the math and notice the discrepancy, no explanation is provided except the single, small-print sentence buried in the pamphlet, and thus the labeling remains confusing, and at best ambiguous as to whether, and under what circumstances, the product "Makes Up to" the amount stated, and at what point the efficacy of the product becomes less than what the consumer believes it to be, or not efficacious at all.

## PLAINTIFF'S PURCHASE, RELIANCE, AND INJURY

33.     Plaintiff Elisabeth Martin purchased Roundup Super Concentrate on at least three occasions, from the Wal-Mart located at 4210 East Highland Avenue, in Highland, California, or the Lowes located at 27847 Greenspot Road, in Highland, California.

34.     Ms. Martin most recently purchased the product in January or February of 2016. Ms. Martin believes she purchased the 35.2- and/or 64-ounce sizes.

35.     Plaintiff (and other members of her family) used the Roundup Super Concentrate with a handheld sprayer, along her sidewalk and driveway, and to kill weeds that came up through the cement and on her patio. When using the Roundup Super Concentrate, plaintiff diluted the product according to the instructions prominently displayed on the front page of the pamphlet taped to the back panel of the product's label, which states, "For best results, add 2-1/2 fl oz (5 Tbs) to 1 gallon of water." Plaintiff opened and reviewed the inside pages of the pamphlet only after purchasing the product, and even then relied upon and followed the most prominently displayed "best results" mixing instruction.

36.     In purchasing Roundup Super Concentrate, plaintiff relied on the prominent labeling claim near the top of the front of the bottle stating that the product makes "up to 23 Gallons," or "up to 42 Gallons," which she took to mean would, in fact, make 23 gallons or 42 gallons when used as directed.

37.     When purchasing Roundup Super Concentrate, plaintiff was seeking a product that was effective at killing all unwanted weeds and grass, and which was more affordable

11

than the Roundup Ready-to-Use products, and understood that she was purchasing a concentrate with a substantially better dollar-per-gallon value than the Ready-to-Use alternative (*i.e.*, the value that would be had if the product supplied the maximum number of gallons). Moreover, plaintiff was seeking a product that would yield the number of gallons represented, and a product that, at the dilution resulting in that amount of gallons, would kill all unwanted weeds and grass, including being "GUARANTEED" to "KILL[] THE ROOTS."

38.     These representations, upon all of which plaintiff relied in purchasing these products, however, were false and misleading, and had the capacity, tendency, and likelihood to confuse or confound plaintiff and other consumers acting reasonably. This is because, as described in detail herein, the Roundup Concentrates *do not* yield the volume, in gallons, as promised if following the instructions for the advertised uses prominently stated on the product's back panel.

39.     By representing the *amount* of product plaintiff was supposedly buying, Monsanto implicitly also represented the product's value to plaintiff. That representation, however, was false because, based on Monsanto's prominent mixing instructions, the Roundup Super Concentrate was effectively under-filled, such that plaintiff received a different and substantially lesser value—one with a higher cost—than Monsanto represented. Accordingly, plaintiff did not realize the benefit of her bargain and her expectations were not met.

40.     In addition, plaintiff paid substantially more than the market value represented by the price she and Monsanto bargained for. Like other class members, plaintiff bargained with Monsanto on a particular market value for a certain number of gallons of Roundup made by diluting the Roundup Super Concentrate. But because Monsanto only delivered a portion of those gallons, plaintiff paid a price-per-gallon that was significantly higher than reflected in the market price to which she and Monsanto agreed, and received an amount of gallons that was significantly lower than Monsanto promised. For these reasons, the Roundup Super Concentrate plaintiff purchased was worth less than what she paid for it.

12

41. Thus, through use of the misleading representation as to the amount of product provided and thereby its value, Monsanto obtained enhanced negotiating leverage allowing it to command a price plaintiff and other class members would not have paid had they been fully informed. Specifically, plaintiff and other Class members would have paid approximately 50% less for Roundup Concentrate Plus, and 40% less for Roundup Super Concentrate, had they paid the agreed-upon market price for the number of gallons actually received.

42. The Roundup Concentrates cost more than similar products without misleading labeling, and would have cost less absent the false and misleading statements complained of herein.

43. Absent the false and misleading labeling complained of herein, plaintiff and other Class members would only have been willing to pay less for the Roundup Super Concentrate.

44. By use of its misleading labeling, Monsanto created increased marketplace demand for the Roundup Concentrates, and increased its market share relative to what its demand and share would have been had Monsanto labeled the Roundup Concentrate products truthfully.

45. Plaintiff and other Class members lost money as a result of Monsanto's deceptive claims and practices in that they did not receive what they paid for when purchasing the Roundup Concentrates.

46. Plaintiff and other Class members detrimentally altered their position and suffered damages in an amount of the under-filled portion of her Roundup Concentrates purchase.

47. Plaintiff regularly uses herbicides to maintain her property. If plaintiff could be assured that statements regarding the amount of Roundup yielded when mixing according to the instructions for the advertised uses was accurate, and that the price of the products reflected a market value consistent with the amount of product actually provided, she would purchase the product or other similar Roundup concentrate products in the future.

13

## **CLASS ACTION ALLEGATIONS**

48.     While reserving the right to redefine or amend the class definition prior to seeking class certification, pursuant to Federal Rule of Civil Procedure 23, plaintiff seeks to represent a Class of all persons who, on or after October 13, 2012 (the "Class Period"), purchased in California for personal or household use and not for resale or distribution, Roundup Weed & Grass Killer Concentrate Plus, or Roundup Weed & Grass Killer Super Concentrate, in packaging whose label stated that the product "makes up to" a specified number of gallons, specifically as follows:

| Product | Label Statement |
|---|---|
| Roundup Concentrate Plus Singles 18 oz. | "makes up to 6 gallons" |
| Roundup Concentrate Plus 32 oz. | "makes up to 10 gallons" |
| Roundup Concentrate Plus 36.8 oz. | "makes up to 12 gallons" |
| Roundup Concentrate Plus 64 oz. | "makes up to 21 gallons" |
| Roundup Super Concentrate 35.2 oz. | "makes up to 23 gallons" |
| Roundup Super Concentrate 64 oz. | "makes up to 42 gallons" |
| Roundup Super Concentrate 128 oz. | "makes up to 85 gallons" |

49.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and Court.

50.     Questions of law and fact common to plaintiffs and the Class include:

a.     whether by mixing according to the instructions on the back label of the Roundup Concentrates, the products would result in the "Makes Up To" amount of gallons stated on the principal display panel and in the first bullet point under the heading "MIXING INSTURCTIONS" in the taped, sealed pamphlet;

b.     whether the claimed "Makes up to" amount of gallons was material to purchasers;

c.     Whether a reasonable consumer believes that "Makes up to" actually means the product will make that amount when used under normal, reasonable conditions;

14

d.     Whether a reasonable consumer would remove the sealed pamphlet before purchasing any Roundup Concentrate products;

e.     Whether a reasonable consumer would notice the statement in the pamphlet and understand what "easy to kill weeds such as seedlings" means;

f.     Whether a reasonable consumer would be likely to deviate from the instructions included on the back panel of Roundup Concentrate Plus and/or in the pamphlet to "Add 6 fl oz per Gallon of Water" in light of Monsanto's representation "for best results, add 6 fl oz (12 Tbs) per gallon of water."

g.     Whether a reasonable consumer would be likely to deviate from the instructions included on the back panel of Roundup Super Concentrate and/or in the pamphlet to "Add 2 1/2 fl oz per Gallon of Water" in light of Monsanto's representation "for best results, add 2-1/2 fl oz (5 Tbs) to 1 gallon of water."

h.     Whether Monsanto's conduct violates public policy;

i.     The proper amount of damages, including punitive damages;

j.     The proper amount of restitution;

k.     The proper scope of injunctive relief, including corrective advertising and recall from the marketplace; and

l.     The proper amount of attorneys' fees.

51.     These common questions of law and fact predominate over questions that affect only individual Class members.

52.     Plaintiff's claims are typical of Class members' claims because they are based on the same underlying facts, events, and circumstances relating to Monsanto's conduct. Specifically, all Class members, including plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Roundup Concentrates, and suffered economic injury because Roundup Concentrates are misrepresented in the same manner. Absent Monsanto's business practice of deceptively and unlawfully labeling the Roundup Concentrates, plaintiff and other Class members would have paid less for the products.

53.     Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and specifically in litigation involving false and misleading advertising.

54.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class member is small, such that, absent representative litigation, it would be infeasible for Class members to redress the wrongs done to them.

55.     Monsanto has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

56.     As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

57.     In addition, it may be appropriate, pursuant to Fed. R. Civ. P. 23(c)(4), to maintain this action as a class action with respect to particular issues.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT,

### 15 U.S.C. §§ 2301 *ET SEQ.*

### (*By Plaintiff, on Behalf of Herself Only*[1])

58.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

---

[1] Plaintiff's motion for class certification, filed on February 6, 2017, originally sought certification of her MMWA claim when it was based on the express warranty claim she also sought to be certified. (See Dkt. No. 51.) On February 16, the Court dismissed the MMWA claim as pled, based on express warranty, but granted plaintiff leave to amend to plead her MMWA claim based on her implied warranty claim. (See Dkt. No. 57.) Plaintiff amended her Complaint on February 21. (Dkt. No. 62.) By this amendment, she clarifies that she no longer seeks certification of the MMWA claim, since it is based only on the implied warranty claim for which she never sought certification.

59.    The Roundup Concentrates are consumer products within the meaning of 15 U.S.C. § 2301(1).

60.    Plaintiff and the Class members are consumers within the meaning of 15 U.S.C. § 2301(3).

61.    Monsanto is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) & (5).

62.    The Magnuson-Moss Warranty Act permits a consumer to recover damages caused "by the failure of a supplier, warrantor, or service contractor to comply with any obligation under his [Act], or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1).

63.    As set forth herein and further discussed in paragraphs 106-111 below, the Roundup Concentrates "did not conform to the promises and affirmations made on the container or label of the goods," as required by Cal. Com. Code § 2314(2)(f), and as a result, Monsanto breached an implied warranty.

64.    Specifically, as set forth herein, the Roundup Concentrates do not "Make[] Up to" the number of gallons claimed under normal conditions of use for the advertised applications, over the lifetime of the products.

65.    Although the Roundup Concentrates do not meet the "Make[s] Up to" specification, Monsanto has so far failed to refund Roundup Concentrate purchasers their money.

66.    By reason of Monsanto's breach of this implied warranty, Monsanto has violated the statutory rights due plaintiff and the class members pursuant to the Magnuson-Moss Warranty Act, thereby damaging plaintiffs and the class members. 15 U.S.C. §§ 2301 *et seq.*

67.    Plaintiff gave Monsanto notice of its breach of warranties and violation of the Magnuson-Moss Warranty Act, but Monsanto has failed to remedy the violations.

68.    Plaintiff and the class were injured as a direct and proximate result of Monsanto's breach because they would not have purchased the Roundup Concentrates on the same terms if they had known the true facts concerning the amount the products make, and lost a substantial portion of the bargain they expected.

17

69.    Plaintiff, on behalf of herself and the class members, seeks damages, equitable relief, and attorney's fees and costs pursuant to 15 U.S.C. §§ 2310(d)(1)-(2).

## SECOND CAUSE OF ACTION

### Violations of the California Consumers Legal Remedies Act,

### Cal. Civ. Code §§ 1750 *et seq.*

70.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

71.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

72.    Monsanto's false and misleading labeling and other policies, acts, and practices described herein were designed to, and did, induce the purchase and use of Monsanto's Roundup Concentrates for personal, family, or household purposes by plaintiff and other Subclass members, and violated and continue to violate at least the following sections of the CLRA:

      a.    § 1770(a)(5): Representing that goods or services have characteristics, ingredients, uses, benefits, or quantities which they do not have;

      b.    § 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

      c.    § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

      d.    § 1770(a)(16): Representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

73.    Monsanto profited from its sales of the falsely, deceptively, and unlawfully advertised Roundup Concentrates to unwary consumers.

74.    Monsanto's wrongful business practices regarding the Roundup Concentrate constituted, and constitute, a continuing course of conduct in violation of the CLRA.

18

75. In compliance with Cal. Civ. Code § 1782, plaintiff sent written notice to Monsanto of her claims, but Monsanto has failed, after 30 days, to satisfy plaintiff's demand or to rectify the behavior. Accordingly, plaintiff, on behalf of herself and the class, seeks injunctive relief, restitution, statutory damages, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

76. In compliance with Cal. Civ. Code § 1782(d), an affidavit of venue was filed concurrently with the original Complaint.

### THIRD CAUSE OF ACTION

### Violations of the False Advertising Law,

### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

77. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

78. Under the FAL, "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

79. As alleged herein, the advertisements, labeling, policies, acts, and practices of Monsanto relating to its Roundup Concentrates misled consumers acting reasonably as to the amount purchased and efficacy of Roundup Concentrates.

80. Plaintiff suffered injury in fact as a result of Monsanto's actions as set forth herein because plaintiffs purchased Roundup Super Concentrate in reliance on Monsanto's false and misleading marketing claims that the products "Make Up to" a certain volume when the instructions on the back panel are followed and/or when a purchaser seeks to obtain "best results" as instructed and advertised by Monsanto.

81. Plaintiff suffered injury in fact as a result of Monsanto's actions as set forth herein because plaintiff purchased Roundup Super Concentrate in reliance on Monsanto's false and misleading marketing claims that the products "Make Up To" a certain volume, by

19

gallons, of product that is efficacious at killing all weeds and grass, and specifically for the applications advertised on the label.

82.     Monsanto's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Monsanto has advertised the Roundup Concentrates in a manner that is untrue and misleading, which Monsanto knew or reasonably should have known.

83.     Monsanto profited from its sales of the falsely and deceptively advertised Roundup Concentrates to unwary consumers.

84.     As a result, pursuant to Cal. Bus. & Prof. Code § 17535, plaintiff and the Class are entitled to injunctive and equitable relief and restitution.

## FOURTH CAUSE OF ACTION
### Violations of the Unfair Competition Law,
### Cal. Bus. & Prof. Code § 17200 *et seq.*

85.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

86.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

87.     The acts, omissions, misrepresentations, practices, and non-disclosures of Monsanto as alleged herein constitute business acts and practices.

### Fraudulent

88.     A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test.

89.     As set forth herein, the Monsanto's claims relating to the Roundup Concentrate products are likely to deceive reasonable consumers and the public.

### Unlawful

90.     The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

   •     The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and

20

• The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

**Unfair**

91.    Monsanto's conduct with respect to the labeling, advertising, and sale of the Roundup Concentrates was unfair because Monsanto's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

92.    Monsanto's conduct with respect to the labeling, advertising, and sale of Roundup Concentrates was also unfair because it violated public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the False Advertising Law.

93.    Monsanto's conduct with respect to the labeling, advertising, and sale of Roundup Concentrates was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

\*         \*         \*

94.    Monsanto profited from its sale of the falsely, deceptively, and unlawfully advertised Roundup Concentrate to unwary consumers.

95.    Plaintiff and Class Members are likely to be damaged by Monsanto's deceptive trade practices, as Monsanto continues to disseminate, and is otherwise free to continue to disseminate misleading information. Thus, injunctive relief enjoining this deceptive practice is proper.

96.    Monsanto's conduct caused and continues to cause substantial injury to plaintiffs and the other Class Members, who have suffered injury in fact as a result of Monsanto's fraudulent, unlawful, and unfair conduct.

97.    In accordance with Bus. & Prof. Code § 17203, plaintiff, on behalf of herself, the Class, and the general public, seeks an order enjoining Monsanto from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

21

98.     Plaintiff, on behalf of herself and the Class also seeks an order for the restitution of all monies from the sale of the Roundup Concentrates that Monsanto unjustly acquired through acts of unlawful competition.

**FIFTH CAUSE OF ACTION**

**Breach of Express Warranty,**

**Cal. Com. Code § 2313(1)**

99.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

100.     Through the Roundup Concentrates' labels, Monsanto made affirmations of fact or promises, or description of goods, that, *inter alia*, the products will yield a certain number of gallons in volume when used in an ordinary and reasonable manner, that the products will yield a certain number of gallons in volume if the instructions for mixing on the back panel were followed, and that the products would be effective in killing all weeds and grass. These and other representations were part of the basis of the bargain, in that plaintiff and the Class purchased the Roundup Concentrates in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

101.     Monsanto breached its express warranties by selling Roundup Concentrates that cannot yield the promised volume in gallons when used reasonably and ordinarily, cannot yield the promised volume in gallons when mixed according to the instructions on the back panel or by a purchaser seeking "best results" as instructed by Monsanto, and which are not effective at killing weeds and grass or for the advertised uses when mixed to the stated strength on the labels and/or pamphlets.

102.     That breach actually and proximately caused injury in the form of the lost purchase price, or some portion thereof, that plaintiff and Subclass members paid for Roundup Concentrates.

103.     Plaintiff gave Monsanto notice of the breach prior to filing the lawsuit, but Monsanto failed to remedy the breach.

104.   As a result, plaintiff seeks, on behalf of herself and other Class Members, actual damages arising as a result of Monsanto's breaches of express warranty, specifically to include without limitation, their expectation damages.

**SIXTH CAUSE OF ACTION**

**Breach of Implied Warranty of Merchantability,**

**Cal. Com. Code § 2314(2)(f)**

***(By Plaintiff, on Behalf of Herself Only)***

105.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

106.   Monsanto, through its acts set forth herein, in the sale, marketing, and promotion of the Roundup Concentrates, made representations to plaintiff and the Class that, among other things, the products yield a certain volume by gallons of product that is effective at killing all weeds and grass, and specifically for the advertised uses.

107.   Monsanto is a merchant with respect to the goods of this kind which were sold to plaintiff and the Class, and there was, in the sale to plaintiff and other consumers, an implied warranty that those goods were merchantable.

108.   However, Monsanto breached that implied warranty in that Roundup Concentrates do not yield the volume by gallons for the advertised uses, as set forth in detail herein.

109.   As an actual and proximate result of Monsanto's conduct, plaintiff and the Class did not receive goods as impliedly warranted by Monsanto to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

110.   Plaintiff gave Monsanto notice of the breach prior to filing the lawsuit, but Monsanto failed to remedy the breach.

111.   Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of Roundup Concentrates' purchase price, or some portion thereof.

## **PRAYER FOR RELIEF**

112.   Wherefore, plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for judgment against Monsanto as to each and every cause of action, and the following remedies:

a.      An Order declaring this action to be a proper class action, appointing plaintiff as class representative, and appointing her undersigned counsel as class counsel;

b.      An Order requiring Monsanto to bear the cost of class notice;

c.      An Order compelling Monsanto to conduct a corrective advertising campaign;

d.      An Order requiring Monsanto to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

e.      An Order requiring Monsanto to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, plus pre-and post-judgment interest thereon;

f.      An Order requiring Monsanto to pay all actual, statutory, compensatory, and punitive damages permitted under the causes of action alleged herein;

g.      Pre- and post-judgment interest;

h.      An award of attorneys' fees and costs; and

i.      Any other and further relief that Court deems necessary, just, or proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: March 6, 2017              /s/ Jack Fitzgerald
                                  **THE LAW OFFICE OF JACK FITZGERALD, PC**
                                  JACK FITZGERALD
                                  *jack@jackfitzgeraldlaw.com*
                                  TREVOR M. FLYNN

24

*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**JACKSON & FOSTER, LLC**
SIDNEY W. JACKSON, III
75 St. Michael Street
Mobile, Alabama 36602
Phone: (251) 433-6699
Fax: (251) 433-6127

***Attorneys for Plaintiff and the Proposed Class***