**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.    **ED CV 16-2168-JFW (SPx)**                    Date:  March 24, 2017

Title:        Elisabeth Martin -*v*- Monsanto Company

**PRESENT:**
        **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

   **Shannon Reilly**                          **None Present**
   **Courtroom Deputy**                       **Court Reporter**


**ATTORNEYS PRESENT FOR PLAINTIFFS:**         **ATTORNEYS PRESENT FOR DEFENDANTS:**
            None                                         None

**PROCEEDINGS (IN CHAMBERS):**        **ORDER GRANTING PLAINTIFF'S MOTION FOR**
                                      **CLASS CERTIFICATION [filed 2/6/2017; Docket No. 51]**

        On February 6, 2017, Plaintiff Elisabeth Martin ("Plaintiff") filed a Motion for Class Certification.  On February 20, 2017, Defendant Monsanto Company ("Defendant" or "Monsanto") filed its Opposition.  On February 27, 2017, Plaintiff filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's March 13, 2017 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.        FACTUAL AND PROCEDURAL BACKGROUND**

        Monsanto is the manufacturer of a herbicide known as Roundup. Among other Roundup products, Monsanto manufactures, markets, and sells Roundup Weed & Grass Killer Concentrate Plus ("Roundup Concentrate Plus") and Roundup Weed & Grass Killer Super Concentrate ("Roundup Super Concentrate") (collectively, the "Roundup Concentrates").  Unlike its "Ready-to-Use" Roundup, the Roundup Concentrates must be diluted with water prior to use.

        Monsanto sells Roundup Concentrates in several different bottle sizes.  A prominent sticker on the front neck of the bottle states that the product "Makes Up to __ Gallons", as follows:

| | |
|---|---|
| Super Concentrate 35.2 fl. oz | "Makes Up to 23 Gallons" |
| Super Concentrate 53.7 oz (0.42 gal.) | "Makes Up to 35 Gallons" |
| Super Concentrate - 64 fl. oz. (1/2 gal.) | "Makes Up to 42 Gallons" |

| Super Concentrate - 128 fl. oz. (1 gal.) | "Makes Up to 85 Gallons" |
|---|---|
| Concentrate Plus 32 oz. (1 qt.) | "Makes Up to 10 Gallons" |
| Concentrate Plus 36.8 oz | "Makes Up to 12 Gallons" |
| Concentrate Plus 40 oz. | "Makes Up to 13 Gallons" |
| Concentrate Plus 64 oz. (1/2 gal.) | "Makes Up to 21 Gallons" |
| Concentrate Plus 128 oz (1 gal.) | "Makes up to 42 Gallons" |

The primary label or decal on the front of the bottle also states that the product "KILLS THE ROOTS GUARANTEED."  On the back label of the bottle, the instructions advise users to "Use a Tank Sprayer" and to "Add 6 fl oz Per Gallon of Water" for Concentrate Plus, or "2 1/2 fl oz Per Gallon of Water" for Super Concentrate. Plaintiff alleges that, when users follow the instructions on the back label, the Roundup Concentrates only produce about half of the amount that Monsanto claims on the front neck sticker.

In addition to the instructions on the back label of the bottle, additional instructions for use are included in a pamphlet or fold-out sealed under the back label.  This pamphlet or fold-out can be opened before a consumer purchases the product; however it is unclear how often consumers do so. The instructions in the pamphlet or fold-out advise that, "for best results," the purchaser must add the same amount of concentrate per gallon of water as provided on the back label.  The instructions also advise that, for "easy to kill weeds such as seedlings," the purchaser may add less concentrate per gallon of water.  Only when users follow the instructions for "easy to kill weeds such as seedlings" will the Roundup Concentrates make the amount claimed on the neck sticker.

Monsanto began selling the products with the challenged labels in or around late 2012 or early 2013.  In May 2014, Monsanto decided to remove the "Makes Up to __ Gallons" statement from the neck sticker of Concentrate Plus, but it remains on Super Concentrate.

Plaintiff purchased a 35.2 oz. bottle of Super Concentrate on at least three occasions, most recently in  February 2016.  She contends that she relied on Monsanto's statement that the product "Makes up to 23 Gallons" in purchasing the product, which she understood to mean that the product would make 23 gallons when used as directed on the back label.  Plaintiff attempted to dilute the product according to the instructions on the back label, but the product did not make anywhere close to 23 gallons at that concentration level.  Plaintiff did not read the pamphlet or fold-out sealed under the back label until after she purchased the product, and never noticed the alternative mixing instructions for "easy to kill weeds such as seedlings."

In her Third Amended Complaint filed on March 6, 2017, Plaintiff alleges the following six claims for relief: (1) violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*; (2) violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (3) violations of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (4) violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (5) breach of express warranty, Cal. Comm. Code § 2313(1); and (6) breach of implied warranty of merchantability, Cal. Comm. Code § 2314.

Initials of Deputy Clerk _sr_

With respect to her claims for breach of express warranty, and violations of the UCL, FAL, and CLRA, Plaintiff seeks to represent a class of "all persons who, on or after October 13, 2012 (the 'Class Period'), purchased in California for personal or household use and not for resale or distribution, Roundup Weed & Grass Killer Concentrate Plus, or Roundup Weed & Grass Killer Super Concentrate, in packaging whose label stated that the product 'makes up to' a specified number of gallons . . . ." (the "Class").  Third Amended Complaint ("TAC") at ¶ 48; Notice of Plaintiff's Motion for Class Certification at 1.

## II.    LEGAL STANDARD

Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Federal Rule of Civil Procedure 23.  *Zinser v. Accufix Research Institute, Inc..* 253 F. 3d 1180, 1186 (9th Cir. 2001), *as amended*, 273 F.3d 1266 (9th Cir. 2001).  The party seeking class certification bears the burden of demonstrating that the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) have been satisfied.  *Id.*

Under Rule 23(a), a class action is only proper if:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. Proc. 23(a).

If the Rule 23(a) prerequisites are met, the Court must decide if certification is appropriate under Rule 23(b).   In this case, Plaintiff seeks certification of the Class under Rule 23(b)(3), which authorizes certification if:

[T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A)    the class members' interest in individually controlling the prosecution or defense of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

Initials of Deputy Clerk _sr_

(D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  "When considering class certification under Rule 23, district courts are not only at liberty to, but must perform 'a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (quoting *Dukes*, 131 S. Ct. at 2551). "In many cases, 'that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped.'" *Id.*

## III.     DISCUSSION

### A.     Rule 23(a) Requirements

#### 1.     Numerosity

To satisfy the numerosity requirement of Rule 23(a), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "Joinder need not be impossible so long as potential class members would suffer a strong litigation hardship or inconvenience if joinder were required." *Rannis v. Recchia*, 2010 WL 2124096, at \*3 (9th Cir. May 27, 2010) (citing *Harris v. Palms Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)).  Courts routinely find the numerosity requirement satisfied when the class consists of 40 or more members.  *See EEOC v. Kovacevich "5" Farms*, 2007 WL 1174444, at \*21 (E.D. Cal. Apr. 19, 2007).

In this case, the numerosity requirement is easily satisfied because Monsanto sold hundreds of thousands of the Roundup Concentrates bearing the challenged labels to at least tens of thousands of consumers.  Moreover, Monsanto's own consumer complaints reveal that thousands of consumers were misled in the same manner as Plaintiff.

#### 2.     Commonality

The commonality requirement is satisfied "if there are questions of fact and law which are common to the class."  Fed. R. Civ. P. 23(a)(2).  "The Supreme Court has recently emphasized that commonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Mazza v. Am. Honda Motor* Co., 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)) (internal alteration omitted). "What matters to class certification is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 1331 S. Ct. at 2551 (quotations and citations omitted). "This does not, however, mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law or fact.'" *Abdullah v. U.S. Security*

Initials of Deputy Clerk  _sr_

*Associates, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Mazza*, 666 F.3d at 589).

The Court concludes that Plaintiff has met her burden of demonstrating that there are questions of fact and law that are common to the Class.  In this case, the Class is limited to only those persons who purchased Roundup Concentrates bearing the "Makes Up to _ Gallons" statement, and Plaintiff's claims are all based on her contention that the product did not (and could not) provide the specified amount of spray solution when following the instructions on the back label of the product.   A classwide proceeding in this case has the capacity to generate common answers to common questions apt to drive the resolution of the litigation, including, for example: (1) whether the "Makes Up to __ Gallons" is an express warranty; (2) whether Monsanto breached that warranty by selling non-conforming products; (3) whether the "Makes Up to __ Gallons" statement is material; (4) and whether the statement was likely to deceive reasonable consumers. *See, e.g., Astiana v. Kashi Co.*, 291 F.R.D. 493, 505 (S.D. Cal. 2013) ("Determinations of whether Defendant misrepresented its products and, as a result, whether warranties were breached, are common issues appropriate for class treatment."); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 241 (N.D. Cal. 2014) ("Plaintiffs have demonstrated that there are numerous questions common to the class: whether Defendants' "All Natural" representations are false and misleading, . . .and whether the representations constitute "unfair" or "unlawful" practices under the UCL, constitute a breach of warranty, or are likely to deceive reasonable consumers in violation of the FAL, CLRA, and UCL.").

###### 3.    Typicality

Typicality exists when "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998).  "Although the claims of the purported class representative need not be identical to the claims of other class members, the class representative 'must be part of the class and possess the same interest and suffer the same injury as the class members.'"  *Lymburner v. U.S. Financial Funds, Inc.*, 263 F.R.D. 534, 540 (N.D. Cal. 2010) (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)).  To assess whether or not the representative's claims are typical, the Court examines "'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985)).  In addition, "class certification is inappropriate where the putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  *Id.* (citing cases).

The Court concludes that Plaintiff's claims are sufficiently typical of the class claims. In this case, Plaintiff alleges that she and all class members were exposed to the same statement, i.e., "Makes Up to __ Gallons", and that they were all injured in the same manner, i.e., the Roundup Concentrates provided less spray solution than promised when diluted in accordance with the instructions on the back label.

That some class members purchased Concentrate Plus, while Plaintiff purchased Super Concentrate, does not defeat typicality "because the alleged misrepresentation was the same as to each" type of the Roundup Concentrates. *See Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL 5746364,

at *5 (N.D. Cal. Sept. 30, 2016). Plaintiff's "claims, in other words, have nothing to do with the unique characteristics of the various [Roundup Concentrate] products; they have to do only with what is allegedly shared by all those products." *See Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, at *14 (N.D. Cal. Nov. 18, 2014).

While Monsanto asserts that Plaintiff is not typical of the class because she "did not read the instructions prior to purchase" (Monsanto's Opposition at 9), Monsanto fails to present any evidence that any significant portion of the class read the pamphlet or fold-out prior to purchase, or, specifically, the alternative mixing instructions for "easy to kill weeds such as seedlings." Plaintiff, on the other hand, has presented evidence that she acted like thousands of other purchasers.  *See* Reply Declaration of Jack Fitzgerald at ¶ 5, Tables 1-7. Moreover, the fact that she did not read the pamphlet does not subject her to any unique defense which threatens to consume the litigation.  Indeed, "a plaintiff's individual experience with the product is irrelevant where, as here, the injury under the UCL, FAL, and CLRA is established by an objective test." *Bruno v. Quten Research Inst.*, LLC, 280 F.R.D. 524, 534 (C.D. Cal. 2011).  "Specifically, this objective test states that injury is shown where the consumer has purchased a product that is marketed with a material misrepresentation, that is, in a manner such that members of the public are likely to be deceived."  *Id.*  at 534 (C.D. Cal. 2011).

Accordingly, the Court concludes that Plaintiff's claims are typical of the claims of the class.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4). To satisfy constitutional due process concerns, "absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (citing *Hansberry v. Lee*, 311 U.S. 32, 42-3 (1940)).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

The Court concludes that Plaintiff has standing, has no conflict of interest with other class members, is aware of her obligations as a class representative, and has been and will continue prosecuting the action vigorously on behalf of the class. *See In re Brazilian Blowout Litig.*, 2011 WL 10962891, at *5 (C.D. Cal. Apr. 12, 2011)

Monsanto claims that Plaintiff is inadequate because she "seeks less in damages than the purported class members could receive outside of a class litigation through a full refund." Monsanto's Opposition at 11. Specifically, Monsanto offers a "Consumer Guarantee" which provides: "If for any reason you are not satisfied after using this product, simply send us original proof of purchase and we will replace the product or refund the purchase price."  The Court agrees with Plaintiff that this Consumer Guarantee does not defeat Plaintiff's adequacy as a class representative.  "A named plaintiff can represent a class *only* by filing a lawsuit; that is what the Federal Rules of Civil Procedure (and Rule 23 in particular) are for. Named plaintiffs are hardly adequate representatives of a class by *not* filing a lawsuit, because then they are not class

Initials of Deputy Clerk _sr_

representatives at all!" In *re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 29 (D. Me. 2013). "Moreover, members . . . who determine that their interests are better served . . . by applying for a refund . . . are free to opt out of the class." *Id.* (citation omitted).

Monsanto also argues "credibility issues" undermine Plaintiff's adequacy, suggesting she "altered" her testimony. Monsanto's Opposition at 13-14. However, after reviewing the relevant testimony, the Court concludes that Monsanto has failed to raise serious credibility issues with respect to Plaintiff's understanding of the gallons statement, reliance, or deception.

As for the appointment of Plaintiff's counsel, Monsanto does not dispute that Plaintiff's counsel will fairly and adequately represent the interests of the Class. Plaintiff's counsel have submitted declarations demonstrating that they have had substantial experience with similar class actions and other false advertising litigation, have no conflicts, and will continue prosecuting the action vigorously on behalf of the Class. Plaintiff's counsel have also conducted a significant amount of work in identifying and investigating the claims of the class members, and in preparing this motion for class certification within the 90-day deadline under Local Rule 23-3. Accordingly, the Court concludes that class counsel will fairly and adequately represent the interests of the Class.

## B.      Rule 23(b)(3) Requirements

Having concluded that the Rule 23(a) requirements are satisfied, the Court must consider whether certification is appropriate under Rule 23(b)(3). In order to certify a class pursuant to Rule 23(b)(3), Plaintiff must demonstrate that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and that (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

### 1.      Predominance

To satisfy the requirements of Rule 23(b)(3), common questions must constitute a significant aspect of the case, and those common questions must be capable of resolution for class members in a single action. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). A showing of commonality under Rule 23(a)(2) is not sufficient to fulfill the requirements of Rule 23(b)(3). *Id.* "[T]o meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof.'" *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 136 (2nd Cir. 2001). "The overarching focus [is] whether trial by class representation would further the goals of efficiency and judicial economy." *Vinser v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009).

**(a)      With respect to liability, questions of law or fact common to the class predominate over any questions affecting only individual members.**

Initials of Deputy Clerk  sr

"Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying causes of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).  Accordingly, because Plaintiff seeks to certify a class of purchasers alleging claims for breach of express warranty, and violations of the UCL, CLRA, and FAL, the Court must examine the elements of these claims for relief.

In order to prevail on a claim for breach of express warranty, Plaintiff must establish that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (quotations and citation omitted). "Proof of reliance on specific promises or representations is not required." *Id.* "Accordingly, courts have found that breach of express warranty claims are appropriate for class treatment where whether defendant misrepresented its product and whether such misrepresentation breached warranties are issues common to members of the putative class." *Id.* at 985. "[H]owever, class treatment of breach of express warranty claims is only appropriate if plaintiffs can demonstrate that the alleged misrepresentation would have been material to a reasonable consumer." *Id.*

Courts generally consider claims under UCL, FAL, and CLRA together. *Id.* at 982. California's FAL, CLRA, and UCL's "fraudulent" prong "prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quotation omitted). This is judged by the effect it would have on the reasonable consumer. *Id.* at 938. Under both the UCL and FAL, relief is available without individualized proof of deception, reliance, and injury. *See In re Tobacco II Cases*, 46 Cal.4th 298, 320 (2009); *see also Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 154 (2010) ("[W]hile a named plaintiff in a UCL class action now must show that he or she suffered injury in fact and lost money or property as a result of the unfair competition, once the named plaintiff meets that burden, no further individualized proof of injury or causation is required to impose restitution liability against the defendant in favor of absent class members."). Although Plaintiff must prove actual reliance as an element of the CLRA claim, reliance may be presumed as to the entire Class if Monsanto's misrepresentations were material. *See, e.g., Miller v. Fuhu Inc.*, 2015 WL 7776794, at *16 (C.D. Cal. Dec. 1, 2015). "Since materiality, like the reasonable consumer test, concerns objective features of allegedly fraudulent representations and omissions, not subjective questions of how those representations and omissions were perceived by each individual consumer, materiality presents common questions of fact suitable for class litigation." *Id.* at *16. The objective tests for deception and materiality "renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate class members' 'individual interaction with the product.'" *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012).

In light of the elements of the claims for breach of express warranty, and violations of the CLRA, FAL, and UCL, the Court concludes that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  In this case, the Class is limited to only those consumers who purchased the Roundup Concentrates with the "Makes Up to ___ Gallons" statement prominently featured on the neck label.  Whether such a statement constitutes an express warranty, whether that warranty was breached, and whether that statement was likely to deceive a reasonable consumer are issues subject to common and

Initials of Deputy Clerk _sr_

generalized proof.

Monsanto argues, in relevant part, that because class members had varying reasons for purchasing the Roundup Concentrates, materiality and reliance are predominating individual issues. However, with respect to Plaintiff's claims for breach of express warranty, and for violations of the UCL and FAL, Plaintiff need not prove individualized reliance.  And, while reliance is an element of the CLRA, "an inference of common reliance arises if representations are material, and materiality is judged by an objective standard rather than any understandings specific to the individual consumer." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 242 (N.D. Cal. 2014).[1] Accordingly, if plaintiff "can prove materiality on a classwide basis, she can also demonstrate classwide reliance." *Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016).

The Court concludes that, at this stage of the litigation, Plaintiff has presented sufficient evidence to demonstrate that the "Makes Up to __ Gallons" statement is material to the reasonable consumer such that class certification is appropriate.   Specifically, Monsanto's own documents and consumer studies demonstrate materiality. *See Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *8 (N.D. Cal. July 15, 2016)("Materiality can be shown by a third party's, or defendant's own, market research showing the importance of such representations to purchasers.").  Indeed, Monsanto itself considers its Gallons statement to be a "key claim[ ]". Plaintiff's Exh. 34, MM4668.  Furthermore, a 3,000 person consumer research study found that "[w]hen asked what helps them make a purchase decision about what concentrate product to buy at [the] shelf," 42% of respondents selected  "How many gallons of product you can make," which was the third-highest of 13 factors.  Plaintiff's Exh. 35 at MM3743.  And, 66% of those who purchased concentrated herbicide did so because of "Value (price per oz. is cheaper than ready-to-use)."  *Id.* at MM3742.  In addition, when researchers presented subjects with a mock shelf of herbicide products in a series of focus groups, they observed that "consumers noticed several product characteristics/benefits that caught their eyes, with some frequency," including "Price to gallon 'best value'" with "some consumers actually d[oing] the math on their notepads for various brands." Plaintiff's Exh. 36 at MM3887.

Not surprisingly, in its Opposition, Monsanto concedes that "How many gallons of product you can make" is one of the reasons consumers purchase Roundup Concentrates, but argues that it is "not the sole (nor the primary) reason."  Monsanto's Opposition at 17.  However, at this stage, Plaintiff need not prove that every Roundup Concentrate consumer would find the "Makes Up to __ Gallons" statement material; Plaintiff need only demonstrate that a reasonable consumer would find it material.  *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1019 (C.D. Cal. 2015) ("Plaintiffs need not prove at this stage that every ConAgra customer would find the "100%

---

[1]Although it is true that "a presumption [of reliance] is not appropriate when class members 'were exposed to quite disparate information,'" *Hobbs v. Brother Int'l Corp.*, 2016 WL 4734394, at *4 (C.D. Cal. Sept. 8, 2016), Monsanto has "failed to present any evidence that class members were able to purchase [the] products without being exposed to the alleged misrepresentations," so predominance is satisfied. *See In re Brazilian Blowout Litig.*, 2011 WL 10962891, at *7 (C.D. Cal. Apr. 12, 2011).  Moreover, in "cases involving product labels," courts "reasonabl[y] . . . infer that the class members were exposed to the allegedly misleading statement at the point of sale." *Gilbert v. MoneyMutual, LLC*, 2016 WL 7785453, at *8 (N.D. Cal. Feb. 8, 2016).

Initials of Deputy Clerk _sr_

Natural" claim material or would believe that it meant the products contained no GMOs. Rather, they need only demonstrate that a reasonable consumer would understand it in that way and find it material.").

Accordingly, the Court concludes that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. 23(b)(3).

### (b)  Plaintiff's damages models are tied to Plaintiff's theory of liability and are capable of measurement on a classwide basis.

In order to satisfy the predominance requirement under Fed. R. Civ. P. 23(b)(3), Plaintiff must show that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).  As the Supreme Court held in *Comcast*, Plaintiff's method of proving damages must be tied to her theory of liability.  *Id.*  In other words, Plaintiff's damages "model purporting to serve as evidence of damages in this class action must measure *only those damages attributable to [the defendant's conduct]*.  If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."  *Id.* (emphasis added).

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount," Cal. Com. Code § 2714(2), which "give[s] the injured party the benefit of his bargain," *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *13 (N.D. Cal. May 27, 2016).

Plaintiff's theory of liability is that class members were harmed when Monsanto sold them Roundup Concentrates that did not make the number of gallons of solution promised when following the instructions on the back label.  Consistent with Plaintiff's liability theory, Plaintiff's expert, Colin Weir, determined the class's benefit-of-the-bargain damages by calculating the "underfill" percentage, and multiplying that amount by the products' aggregate retail sales. The "underfill" percentage can be calculated by comparing the number of gallons made when following the instructions on the back label with the number of gallons promised on the neck label.  The "underfill" percentage can then be multiplied by the retail price to obtain a standard damage amount for each bottle, and the total damages can be determined by multiplying the underfill percentage by the aggregate retail sales.

The Court concludes that this benefit-of-the-bargain model, albeit simplistic, is adequately tied to Plaintiff's theory of liability on its express warranty claim and appears to be capable of measuring damages on a classwide basis. *See Vaccarino v. Midland Nat'l Life Ins. Co.*, 2014 WL 572365, at *8 (C.D. Cal. Feb. 3, 2014). The methodology is identical for every purchaser and, for any given bottle size, the calculation is identical for every class member who purchased that size.

In addition, the Court concludes that Plaintiff's out-of-pocket damages model is adequately tied to her theory of liability on the UCL, FAL, and CLRA claims and appears to be capable of measuring damages on a classwide basis.  The UCL, FAL, and CLRA all "authorize a trial court to grant restitution to private litigants asserting claims under those statutes." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 694 (2006).  "In its simplest form, restitution is simply the

Initials of Deputy Clerk  _sr_

return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received." *Chowning v. Kohl's Dep't Stores, Inc.*, No. CV1508673RGKSPX, 2016 WL 1072129, at *5 (C.D. Cal. Mar. 15, 2016) (quotations and citation omitted).  In other words, damages for the consumer fraud claims  are measured as by "out-of-pocket" costs.

"Fair market value is generally understood to be '[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect.'" *Schwab v. Comm'r of Internal Revenue.*, 715 F.3d 1169, 1178 (9th Cir. 2013) (quotation omitted). Because, "[i]n an ordinary market, price is a proxy for value," the "price paid for a good that was misrepresented to have a given characteristic can serve as a proxy for the value of a product with the misstated characteristic." *Saavedra v. Eli Lily & Co.*, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014).

In this case, class members bargained for a certain price-per-gallon of spray solution: the average retail price divided by the number of gallons promised. This price-per-gallon can serve as a proxy for the actual value-per-gallon of spray solution.   Accordingly, the price-per-gallon value can be multiplied by the number of gallons the products actually supplied, to determine the actual value of the products. Class members' out-of-pocket costs, thus, can be determined by calculating the difference between this price and the higher price they paid. *Cf. Hendricks v. Starkist Co.*, 2016 WL 5462423, at *5 (N.D. Cal. Sept. 29, 2016).

Monsanto disagrees that Plaintiff's damages models are tied to her theory of liability and that they are capable of measurement on a classwide basis.  Although Monsanto has pointed out flaws in Plaintiff's damages models through persuasive arguments and expert testimony, the Court concludes that those flaws are not sufficient to defeat class certification.  The models are adequately tied to Plaintiff's theory of liability, and they appear to be capable of measuring damages on a classwide basis.  Monsanto, of course, may challenge those models through vigorous cross-examination and the presentation of contrary evidence and expert testimony at trial.

### 2.    Superiority

Rule 23(b)(3) provides the following non-exhaustive list of factors to assist the Court in determining whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy: (1) the class members' interest in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.

The Court agrees with Plaintiff that individual prosecution of Plaintiff's claims is impractical because the cost of litigating a single case would undoubtedly exceed the potential return.  Moreover, the Court is unaware of any individual actions pending against Monsanto based on the claims asserted by Plaintiff.  The Court also agrees with Plaintiff that adjudicating these claims as a class action will promote efficiency by avoiding multiple individual lawsuits, and the Court does not anticipate any particular difficulties in managing this case as a class action.

The Court finds Monsanto's argument that its refund policy renders class treatment inferior

Initials of Deputy Clerk __sr__

unpersuasive.  Pursuant to the plain language of Fed. R. Civ. P. 23(b)(3),  "[t]he analysis is whether the class action format is superior to other methods of adjudication, not whether a class action is superior to an out-of-court, private settlement program." *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 610 (E.D. La. 2006) (emphasis added).  *See also Tatiana Korolshteyn v. Costco Wholesale Corporation*, 2017 WL 1020391, at *8 (S.D. Cal. Mar. 16, 2017) ("[A]s Plaintiff points out in her reply, allowing class members to obtain a refund is not an alternative to "adjudicating" whether Defendants are liable for material misrepresentations on the labels of their products. If it were, then Costco (and any retail store) could freely misrepresent the benefits of their products secure in the knowledge that their return policy effectively immunizes them from any suit seeking restitution."); *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *12 (C.D. Cal. Apr. 9, 2014) (concluding that "Defendants' refund program does not defeat superiority" because "it does not comport with the plain language of Rule 23, which directs courts to consider other available methods of adjudication.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification is **GRANTED**.  Plaintiff's claims for breach of express warranty and for violations of the UCL, FAL, and CLRA shall be maintained as a class action on behalf of the following class of plaintiffs:

All persons who, on or after October 13, 2012 (the 'Class Period'), purchased in California for personal or household use and not for resale or distribution, Roundup Weed & Grass Killer Concentrate Plus, or Roundup Weed & Grass Killer Super Concentrate, in packaging whose label stated that the product 'makes up to' a specified number of gallons as follows:

| | |
|---|---|
| Super Concentrate 35.2 fl. oz | "Makes Up to 23 Gallons" |
| Super Concentrate 53.7 oz (0.42 gal.) | "Makes Up to 35 Gallons" |
| Super Concentrate - 64 fl. oz. (1/2 gal.) | "Makes Up to 42 Gallons" |
| Super Concentrate - 128 fl. oz. (1 gal.) | "Makes Up to 85 Gallons" |
| Concentrate Plus 32 oz. (1 qt.) | "Makes Up to 10 Gallons" |
| Concentrate Plus 36.8 oz | "Makes Up to 12 Gallons" |
| Concentrate Plus 40 oz. | "Makes Up to 13 Gallons" |
| Concentrate Plus 64 oz. (1/2 gal.) | "Makes Up to 21 Gallons" |
| Concentrate Plus 128 oz (1 gal.) | "Makes up to 42 Gallons" |

The Court appoints Plaintiff Elisabeth Martin as class representative and The Law Office of Jack Fitzgerald, PC and Jackson & Foster, LLC as class counsel.

The parties are ordered to meet and confer on or before **March 31, 2017**, to discuss the

Initials of Deputy Clerk  sr

provision of notice to class members.  The parties are further ordered to file a joint plan for effecting notice and an agreed-upon notice to class members on or before **April 7, 2017**. In the unlikely event that the parties cannot agree upon the joint plan and notice to class members, the parties shall file a joint report by **April 7, 2017** containing each party's alternative plan and notice to class members, along with a brief explanation of each party's respective position.

If at any time during the pendency of this action it appears that common questions of law or fact no longer predominate or if the Class becomes unmanageable, the Court will consider decertification of the Class.  *See* Fed. R. Civ. P. 23(c)(1)(C)("An order that grants or denies class certification may be altered or amended before final judgment.").

IT IS SO ORDERED.

Initials of Deputy Clerk  sr